THE UNION PACIFIC RAILWAY COMPANY v. J. W. SPRINGSTEEN, as *Administrator of the estate of Harry E. Phillips, deceased.*

1. RAILROAD — *Defective Crossing — Complaint.* Complaint of a defective railroad crossing made to one who has no charge or control of the same, though he be a servant of the railway company, is no notice of the defect to the company.

2. ———— *No Contributory Negligence.* A railway company by a rule prohibited conductors and engineers from making flying switches; the deceased, a brakeman, working under the direction of an engineer, was not guilty of contributory negligence when the manner of switching by which he was killed had been the usual and customary way of doing the same, though he knew of the rule.

3. NEW TRIAL, *When to be Granted.* A new trial should be granted when it appears that the only theory upon which a judgment could be sustained is upon a phase of the action not tried, but practically ig-

nored, and another phase thereof appeared to have been thoroughly tried, and regarded by all as the important and pivotal part of the case.

*Error from Pottawatomie District Court.*

THE opinion states the case.

*A. L. Williams*, and *Chas. Monroe*, for plaintiff in error.

*D. V. Sprague*, for defendant in error.

Opinion by HOLT, C.:  Harry E. Phillips, deceased, was employed by the Kansas Pacific Railway Company as a switch-man in its yards at Wamego, Kansas, and on the afternoon of the 6th day of June, 1886, while so employed, was killed. J. W. Springsteen, defendant in error, was duly appointed and qualified as his administrator, and as such brought this action against the company, and at the February term, 1887, of the Pottawatomie district court obtained a judgment for $6,000. The company is in this court as plaintiff in error.

The facts surrounding the death of Phillips are substantially these: The engineer and fireman of the switch engine, with Phillips, were moving a caboose from the main to a side-track, known as the "caboose track;" in order to do so the engine, facing west, pushed the caboose westward on the track on which it stood beyond where the caboose track joined with the main track; then by backing down toward the east, while in motion the caboose would be uncoupled from the engine, which passing down the main track faster than the caboose would pass the point where the caboose track was joined to it, when the switchman would open the switch and the caboose coming down more slowly would run in upon the caboose track.  This was the usual method of running cabooses upon this side-track.  On this afternoon, while the engine was backing down with the caboose attached to it, Phillips stepped in between the caboose and engine at the Ash-street crossing, for the purpose of uncoupling the caboose from the engine. (Ash street is a public street in the city of Wamego.)  After he had pulled the coupling-pin and was stepping out from

between the engine and caboose, his foot slipped in between the rail and the plank next to it on the crossing, and being unable to extricate it the caboose broke him down and crushed him under its wheels.

The plaintiff alleges in his petition in substance, that the defendant was guilty of gross negligence and carelessness in providing and using a defective, faulty and improper plank at the crossing, and that by the gross negligence and carelessness of said defendant in allowing and suffering said plank to be and remain at said crossing in an unsafe and dangerous condition, it made the crossing unsafe and dangerous. Concerning this plank there is evidence showing that a part of it was "wany-edged;" that is, that its edge was not square for the entire thickness of the plank. From its appearance it was evidently sawed from the log next after the outside slab had been cut off. In laying it down it was placed with the broad side up, presenting on the surface the appearance of a perfect plank, but the side which appeared square was, in fact, tapering and uneven. In laying down planks at a crossing there should be a space of two and a quarter to two and three-quarters inches left between the rail and the plank on the surface; this was the distance of this plank from the rail at the surface, but underneath, on account of the plank diminishing back from the edge at the surface, there was a cavity of six or seven inches between the lower part of the plank and the rail. It is in evidence that the upper part of the edge of this plank next to the rail had been broken, slivered or bruised off, probably by the travel over the street, so that instead of the surface presenting a distance of two and a quarter to two and three-quarters inches as it should have done, there was a space of eighteen inches or two feet long at the place where this plank was "wany-edged," where the edge of the plank was from three to three and three-quarters inches from the side of the rail at the surface. Phillips in some way put his foot through this opening; as soon as his shoe passed through it at the top there was plenty of room for it beneath; attempting to pull it out, and leaning over the track to the south, he was

not able to do so in that position, and the caboose coming upon him he was broken down, and then his foot was dragged from this hole and he was carried some distance on the crossing; the sole, heel and the upper-leather of the shoe were considerably broken. There was evidence introduced to show that this defect was not apparent by casual observation, and that those in charge of the track, after inspection, had failed to detect the defect in the plank. There was testimony, however, that a Mr. Coulter, at that time a clergyman at Wamego, but who had formerly been a railroad employé, had called the attention of some of the railroad officials to this hole.

There are two theories upon which this case might have been tried and a judgment rendered in favor of the plaintiff: one, that the plank was faulty when it was first laid, and for that reason the defendant was negligent in the construction of the crossing; the other, that after the plank was broken and the opening beside the rail was thus enlarged, the defendant had notice, or ought to have known, of such defect, and was negligent in not repairing the crossing and replacing this plank by a suitable one. From the pleadings, the evidence, the instructions and the questions of fact submitted to the jury — from the entire record — it is apparent that their attention was directed chiefly to the question of whether the defendant had or had not notice of the breaking-off of a part of the plank, and the enlarged opening beside the rail. A considerable portion of the testimony was directed to that issue. Mr. Coulter testified to notifying certain agents of the defendant of this hole, but it was plainly shown that he did not inform anyone who had charge of this part of the track. This evidence was incompetent and misleading, and should have been excluded. (*Solomon Rld. Co. v. Jones*, 30 Kas. 601.)

1. Defective railroad crossing; no notice to company.

The plaintiff says there was evidence showing the plank was faulty and unsuitable when laid, sufficient to sustain the judgment. It appears from the findings of the jury that the defendant did not have notice of the breaking-off of the side of the plank, and therefore this is the only theory upon which

the judgment could be sustained. Such contention has great weight with us, and would be controlling, but the record compels us to believe that was not the phase of the case tried, and that the contention is an afterthought made for the purpose of sustaining the judgment. At the trial neither party had its attention seriously directed to the question of whether the plank was defective when first put on the crossing. It is not certainly adapted to fairly determine the rights of parties that a judgment should be based entirely upon one phase of an action that was barely considered at the trial, while the attention of the court, jury and attorneys had been directed to another, and by all apparently regarded to be the pivotal and important part of the case. The want of averments of the petition concerning the original condition of the plank leads us to the belief that the action was begun, not on the belief that the company was negligent in making the crossing, but in permitting it to remain in an unsafe condition.

3. New trial, when granted.

The defendant complains of the refusal of the court to give the seventeenth instruction asked for by defendant, and the giving of the seventh instruction, which is substantially the converse of the one refused. It is as follows:

"If you believe from the evidence in this case that the defendant had made reasonable and proper rules for the guidance and safety of its employés, and a copy of such rules was furnished by the defendant, and at the time he was killed he was disobeying one of said rules that were binding upon him, and that his death resulted from such disobedience, then your verdict should be for the defendant, unless you should further find from the evidence that such rule was habitually disregarded by the defendant and its officers and agents superior in authority to the deceased, and under whose orders he was acting at the time."

The defendant objects to that part of it following "unless you should further find," etc., etc. The only rule offered by the company in evidence is rule 89, viz.:

"Conductors and engineers are prohibited from making flying switches except at stations where switches are connected

only at one end, and in such case the switch and the car brakes must first be tested to see if in working order, and the car must be run slowly with a man at the brakes. The run must be no longer than required for the purpose, and the remainder of the train must be stopped before the run is attempted."

Young Phillips knew of this rule, but it was not necessarily binding upon him; he was neither a conductor nor an engineer, but a yard switchman at work under an engineer.

There is considerable evidence introduced, both affirming and denying that the switch made that afternoon in placing the caboose upon the side-track was a flying one, most of the witnesses saying they had never heard it called by that name, even if it was one. It was shown very plainly that it was the custom to put cabooses upon the side-track in 2. No contributory negligence. the way the one was switched at the time of the accident. We think a brakeman could not be deemed guilty of negligence when the agents of the company to whom this rule was directed and under whom he served, habitually disregarded it.

The court is of the opinion that the judgment should be reversed, and we so recommend.

By the Court: It is so ordered.

All the Justices concurring.