## HAYES ET AL. v. ·WILLIAMS.

1. DAMAGES UNDER REMEDIAL STATUTES.—Sections 1509 and 1510, Mills' Ann. Stats., are remedial, and only compensatory damages are authorized thereby.

2. STATUTORY REMEDY FOR CAUSING DEATH OF HUSBAND OR WIFE.— Section 1508, Mills' Ann. Stats., gives the surviving wife or husband a preferred right to sue during the first year; but he or she is not forbidden to maintain an action at any time before the expiration of the second year, provided there be no heirs, or provided the heirs, if any, have not instituted judicial proceedings.

3. BONA FIDE EFFORT TO COMPLY WITH STATUTE.—But if the statute were construed otherwise, and the survivor's action were acquired to be brought during the first year, a bona fide effort by suit within that period, though through an excusable mistake against the wrong party and ineffectual, would be sufficient.

4. OMISSIONS IN COMPLAINT SUPPLIED BY ADMISSIONS OF ANSWER.— Admissions made in the statement of a separate affirmative defense are not to be taken as facts upon a controverted question otherwise at issue in the pleadings by appropriate allegation and denial. But where matters that should have appeared in the complaint are sufficiently stated in a separate answer and are nowhere controverted in the pleadings; quære, should not the rule of express aider be applied?

5. INQUIRY FOR INTERMEDIATE CAUSE OF INJURY.—Where a sufficient and independent cause operates between the wrong and injury, resort should be had by the sufferer to the originator of such intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect and proximate to it. The inquiry, therefore, always is whether there was any intermediate cause disconnected from the primary fault and self-operating which produced the injury.

6. PROXIMATE CAUSE OF INJURY A QUESTION OF FACT.—What is the proximate cause of an injury, whether it be the original negligence of one party or the intermediate negligence of another party, is ordinarily a question of fact for the jury to be determined from the minor associated facts and circumstances.

7. COMPENSATORY DAMAGES DEFINED.—Compensatory damages for negligence causing death, are the estimated accumulations of the deceased during the probable remainder of his life, if he had not come to an accidental death, having reference to his age, occupation, habits, bodily health and ability.

8. INSTRUCTIONS FOR COMPUTING.—It is· not necessary for the trial court to specifically enumerate in its charge each and every aggra-

vating or mitigating circumstance to be considered in computing compensatory damages.

9. RIGHT OF COURTS TO GIVE AMENDED OR ADDITIONAL INSTRUCTIONS. —Trial courts possess a large discretion in recalling juries and submitting amended or additional legal propositions by way of instructions. Unless it fairly appears that some legal right of the party complaining has under proper objection been invaded, and that the invasion may have resulted in injury, such action will not constitute ground for reversal.

*Appeal from District Court of Arapahoe County.*

APPELLANTS, Hayes & McGilvray, being contractors and builders, were engaged in performing certain work upon a building fronting on Lawrence street in the city of Denver.

In connection with this work they erected a derrick which was held in position by means of " head " or " back " ropes attached to the building and a guy rope extending through the derrick and across the street in different directions, the ends being fastened to posts on the opposite side. The work of Hayes & McGilvray being temporarily suspended, this derrick was borrowed from them by another contractor, Anderson, for the purpose of putting in place some lintels upon the same building. In using the derrick Anderson did not detach the guy rope from the posts to which it was fastened across the street, nor was it otherwise changed except slightly in direction from time to time by loosening the back ropes as the derrick was moved one way or the other along the front of the building. Anderson completed the work in about four hours during one forenoon and replaced the derrick in the precise position, as nearly as possible, it occupied when he borrowed it, tightening the guy rope and leaving it as he found it.

Four days subsequent to the return of the derrick by Anderson, the projecting hood of a dairy wagon occupied and driven by Thomas S. Williams, the husband of plaintiff, came in contact with one end of the guy rope and was violently thrown to the ground, receiving fatal injuries. Plaintiff first brought suit against Anderson to recover damages on account of the

alleged negligence causing the death of her husband; but upon trial of the cause verdict and judgment were given in favor of defendant. About nineteen months after the date of the accident, but within less than thirty days subsequent to the entry of judgment in the Anderson case, plaintiff instituted the present suit against Hayes & McGilvray, basing the same on their alleged negligence in connection with the guy rope. Issues were duly made by the answer and replication, and a trial took place resulting in verdict and judgment in favor of plaintiff for the sum of $4,500. To reverse that judgment the present appeal was taken.

Messrs. Rogers, Shaffroth & Whitford, for appellants.

Mr. Ralph Talbot and Messrs. Riddell, Starkweather & Dixon, for appellee.

Mr. Justice Helm delivered the opinion of the court.

Five distinct grounds are urged in support of a reversal of the judgment below. The questions thus raised will be considered in the order of their presentation by appellants' brief.

The first and most serious objection urged is that since plaintiff failed to institute the present action within one year after the death of her husband, she was precluded from so doing by the terms of the statute. The specific clause relied on follows a provision authorizing the surviving husband or wife to sue, and reads: " If there be no husband or wife, or he or she fails to sue *within one year after such death* then (suit may be brought) by the heir or heirs of the deceased." Mills' Ann. Stats., sec. 1508.

The statutory provisions under which this action was brought (Mills, secs. 1509, 1510) are remedial, not penal.

They are enacted for the purpose of preserving to the surviving relatives designated in section 1508, *supra*, a right of action that would else have failed by the decease of the party

injured. They are in aid of the common law, not in deroga-
tion thereof. That the recovery authorized is purely com-
pensatory, appears too plainly from the language employed
in said section 1509 to admit of doubt. The jury are there-
by limited to a fair and just compensation with reference to
the necessary injury, and the phrase "mitigating or aggra-
vating circumstances" is confined to those circumstances
which increase or diminish this compensation. *Moffatt v.
Tenney*, 17 Colo 189. These provisions should unquestion-
ably receive a liberal construction. In support of the fore-
going proposition, see *Haggerty v. Central R. R. Co.*, 31 N.
J. Law, 349; *Lamphear v. Buckingham*, 33 Conn. 237; *Burns
v. Grand Rapids & I. R. R. Co.*, 113 Ind. 169; Cooley,
Const. Lim. (5th. ed.) 715. Giving a like construction to
what is known as the Lord Campbell's Act, which may be
regarded as the parent of sections 1509 and 1510, *supra*, and
of all similar American statutes, see Cooley on Torts p. 254.

We do not say that punitive damages can never be recover-
ed in actions of this kind. Section 1512, Mills' Ann. Stat-
utes, a recent enactment, may be broad enough to warrant
such recovery. But these damages can only be obtained upon
proper averment and proof under this statute. And, even
if it were applicable, nothing appears in the present case tend-
ing to show an effort on the part of plaintiff to avail herself
of the statute, or a recognition of this element of damages
by the court.

Considering the language employed in the clause above
quoted from said section 1508, coupled with the fact that
another section—1511—of the same act is a general statute
of limitations requiring all actions of the kind to be brought
within two years after the alleged negligence, the contention
that the legislature intended to absolutely limit the action of
the wife to one year is, in our judgment, unsound. If there
were no surviving wife or husband it would hardly be assert-
ed that the heirs could not bring their action at any time
during the two years. On the other hand, if there were no
heirs, we think the surviving wife or husband might bring

the action at any time during the same period. The provision does not expressly limit the wife's right of action to one year. It simply declares that if she does not sue within that time, the heirs may bring an action. There is no inconsistency in the assumption that the real purpose of this provision was simply to give the surviving wife or husband preference during the first year; but not to estop her or him from maintaining an action at any time before the expiration of the second year, provided there be no heirs, or provided the heirs, if any, have not instituted judicial proceedings.

But the objection now under consideration may be answered in another way. Were we to assume that the wife must claim the benefit of the law within one year from the death of her husband, plaintiff's recovery would still be sustained. The statute being remedial is entitled to a liberal construction in order to effectuate the contemplated relief. And when the wife has by commencing an action in good faith within the year asserted her intention, it is, in our judgment, sufficient. This plaintiff did in the present case by her suit against Anderson. The fact that Anderson was not the proper defendant and that she was ultimately defeated, did not in any way affect the *bona fides* of her action or its sufficiency as an indication of her intent to assert and maintain her statutory right. She acted under the advice of counsel, and the relationship of Anderson to the alleged negligence was of such a nature that his immunity from liability was doubtful until the end of the suit. Plaintiff prosecuted that action with diligence, though the judgment was not rendered therein till after the expiration of the first year from Williams' decease. And within thirty days subsequent to the Anderson judgment and before the expiration of two years from the date of the negligence alleged, she brought the present action.

The case of *Shepard v. St. L. I. M. & S. R. R. Co.*, 3 Mo. Ap. 550, is analogous in this respect to the one at bar. There, the surviving widow instituted suit under a similar statute within the six months allowed her, but was nonsuited. Af-

ter the expiration of the six months she brought the action in which the opinion was written. It was held that by the former proceeding she indicated her intention to claim the benefit of the law and that her right to sue continued during the entire twelve months, which was the general limitation fixed in that state upon such actions. The court declared that the meaning of the legislature was too plain to require the application of formal rules of construction. In conclusion it is asserted that if " the widow does pursue the remedy, though ineffectually, her right vests, and she has the full statutory time ; " and having reference to the particular case pending they say, " she has not failed to sue within six months after such death. She has not abandoned the right to the minor child."

We discover no difference in principle between that case and the one at bar. The real question is : Has the widow by suit in good faith within one year asserted her intention to avail herself of the statutory privilege conferred ? This intention may be shown as fully by an action which for some ulterior reason ultimately fails as by an action which in the end proves successful. The mere fact that the failure, as in the case before us, is due to an excusable mistake in suing the wrong party instead of suffering a nonsuit in attempting to hold the right party, is not significant.

Certain decisions of the supreme court of Missouri are cited by counsel for appellants with great confidence. A strictly logical application of those decisions might, perhaps, lead us to a different conclusion, although as above shown we are in harmony with the court of appeals of that state. The supreme court of Missouri declares the statute penal and not remedial ; that tribunal holds it to be in derogation of the common law and therefore requiring a strict construction. This view conflicts with that of the courts of New Jersey, Connecticut, Indiana and other states, as well as with the opinion of Cooley and other learned law writers touching similar statutes.

Referring to the contention of counsel for appellants that

our statute was probably taken from Missouri, and that because at the time of its adoption some of the Missouri decisions mentioned had been promulgated, the statute should here receive the interpretation then given in that state, we observe : The purpose of all statutory construction is to determine the precise legislative intent. Rules adopted as guides to this intent if incorrectly applied lead to false, not to truthful results, and are to be invoked or rejected accordingly. The very fact that the express words of the statute before us as interpreted by this court in *Moffatt v. Tenney*, *supra*, limit the recovery to fair and just compensation for the actual injury suffered, unequivocally demonstrates that the statute is not penal. We do not feel bound by the Missouri supreme court decisions, founded as they are upon a different conclusion in this respect, and conflicting as they do with the overwhelming authority elsewhere construing similar statutes.

Before passing from this branch of the case reference ought perhaps to be made to a defect in the pleadings. If the first answer above given to the present objection were rejected, and if the case rested solely upon the latter view above stated, the complaint should have contained an averment showing that appellee began the suit against Anderson within one year from the date of Williams' decease. But defendants answered over without interposing a demurrer ; and by supplemental plea averred the facts touching the Anderson suit, together with the dates of its commencement and termination. These facts were not controverted in the replication and remained undisputed by anything in the pleadings. It is said that admissions made in the statement of a separate affirmative defense are not to be taken as facts upon a *controverted* question otherwise at issue in the pleadings by appropriate allegation and denial. *Siter v. Jewett et al.*, 33 Cal. 92 ; *Nudd et al., v. Thompson et al*, 34 Cal. 39. But where, as in the case at bar, the separate answer sufficiently states facts that should have appeared in the complaint and those facts remain wholly undisputed in the plead-

ings, it may be that the rule of " express aider " should be recognized and the infirmity of the complaint be disregarded. In view, however, of what has been said, it is not necessary to the decision of the case at bar that this extension of the rule of express aider be now recognized, and we do not commit ourselves to its announcement.

A second proposition strenuously urged as a ground of reversal is that Anderson was the party responsible for the negligence, if any negligence there were, through which deceased lost his life. It is asserted that in view of Anderson's connection with the transaction, the conduct of Hayes & McGilvray cannot be regarded in law as the proximate cause of the injury. Counsel cite and rely upon the opinion in *Milwaukee R. R. Co. v. Kellogg*, 94 U. S. 469. The writer of that opinion employs, *inter alia*, the following language : " We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury." In section 6, at page 1089, vol. 2, Thompson on Negligence, the same principle is stated as follows: " If A. is guilty of a negligent act, which would not have produced the catastrophe but for the subsequent intervening negligence of B., such negligence of B. not being a result which A. might reasonably anticipate, nor one against which it was his duty to guard, A. will not be responsible for the resulting damages."

Turning to the evidence in the case before us we find : That the derrick was borrowed from appellants for temporary use while placing some lintels in position upon the same

building; that Anderson completed his use in about four
hours in one afternoon; that during such use, though the
derrick was moved back and forth a distance of perhaps
thirty feet in front of the building, the attachments of the
guy rope were not disturbed; that upon setting the lintels,
the derrick was replaced as nearly as possible in the posi-
tion and spot where Anderson found it. Anderson and two
other witnesses testified, without contradiction, that on fin-
ishing the job the guy rope was carefully tightened so that
its position with reference to the street was practically the
same as when he borrowed the derrick. He also testifies
that in requesting the loan he told McGilvray that it was
" for a little while, while we placed some lintels in position."
It further appears, without contradiction, that Anderson's
use of the apparatus entirely terminated four days before the
accident. Did Anderson's connection with the transaction
constitute an intermediate, independent, and efficient cause
producing the injury? What is the proximate cause of an
injury, whether it be the original negligence of one party or
the intermediate negligence of another party, is ordinarily a
question of fact for the jury, to be determined from the minor
associated facts and circumstances. *Milwaukee R. R. Co. v.
Kellogg, supra.* This question was properly submitted to
the jury in the case at bar. That body evidently found that
the temporary use of the derrick by Anderson did not con-
stitute an intermediate, efficient and self-operating fault, dis-
connected from the primary fault or negligence of appellants
in the original placement of the guy rope. They regard the
slight interruption of appellants' control over the derrick and
guy rope by Anderson, in view of the fact that he returned
it to its original position and tightened the rope, as not con-
tributing to the injury. The jury must have found that the
rope was originally placed too near the street by appellants,
or that through the action of the weather or other natural
causes it was so slackened as to become dangerous. In view
of the above discussion it is a matter of no consequence

which of these conclusions was reached. We cannot disturb the verdict upon the ground under consideration.

It is next asserted that the verdict was excessive. The specific contention in support of this assertion is that since plaintiff could only recover for the actual injury suffered by her, and since under the evidence that injury consisted solely of loss of support, a loss necessarily terminating at her decease, her habits, health, age and expectancy of life as well as those of deceased, should have entered into the computation. The argument is not without a certain degree of plausibility, but we cannot adopt it. If there was any reason for supposing that in the ordinary course of nature plaintiff would have died before her husband, had the accident not happened, it certainly did not devolve upon her either to plead or to prove the fact. And in the absence of such proof by defendant, we perceive no reason why the rule stated by this court under a former statute and in effect embodied in the instructions before us, should now be disregarded. This rule allows as compensatory damages " the estimated accumulations of the deceased during the probable remainder of his life, if he had not come to an accidental death, having reference to his age, occupation, habits, bodily health and ability." *Denver S. P. & P. R. R. Co. v. Woodward,* 4 Colo. 1 ; *Kansas Pac. R. R. Co. v. Lundin,* 3 Colo. 94 ; *Smith v. W. St. L. & P. R. R. Co.,* 92 Mo. 359.

We cannot say that there was no evidence permitting that portion of the seventeenth instruction relating to aggravating or mitigating circumstances. No attempt was made at the trial to take advantage of the act of 1889 (sec. 1512 above mentioned) which permits exemplary damages. The jury were expressly told to confine the damages to such a sum, not exceeding $5,000, as would compensate plaintiff " in a pecuniary sense for the loss, if any, suffered ; " and that " in arriving at this sum " they might take into consideration mitigating or aggravating circumstances connected with the neglect or injury complained of. Thus the instruction did in effect explain the meaning of the statutory phrase in question.

The jurors could hardly have been misled in this respect, and it is doubtful if an explanation *in extenso* by the court would have further aided them. We do not admit the correctness of the rule contended for, that in actions like the one at bar it is necessary for the court to specifically enumerate in its charge each and every aggravating or mitigating circumstance to be considered in computing compensatory damages.

The jury having deliberated upon their verdict for a considerable time returned into court and were given an additional instruction. After they retired a general exception to the instruction thus given was reserved. We discover no serious objection either to the legal principles or to the application thereof embodied in this additional charge. In view of its scope the circumstances under which it was given were unfortunate for appellants; and it might more properly have formed a part of the original charge. But though counsel for appellants were present, they in no way interposed the specific objection as to time, nor did they ask permission to re-argue the cause. Trial courts of necessity possess and exercise a large discretion in recalling juries and submitting amended or additional legal propositions by way of instructions. Unless it fairly appears that some legal right of the party complaining has under proper objection been invaded, and that the invasion may have resulted in injury, a reversal will not take place upon this ground. *Commonwealth v. Snelling*, 15 Pick. 321; *Dowzelot et al. v. Rawlings*, 58 Mo. 78.

The judgment of the court below is

*Affirmed.*