NEW YORK TRANSP. CO. v. GARSIDE (two cases).

(Circuit Court of Appeals, Second Circuit. November 7, 1907.)

Nos. 39, 40.

1. DAMAGES—PERSONAL INJURIES—PLEADING AND PROOF.

Under a general allegation in the complaint in an action for personal injury that plaintiff was disabled, crippled, and injured in her limbs, evidence was admissible to show that after the injury one of her legs was shorter than the other, in the absence of any motion for a bill of particulars under the complaint.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 441.]

2. SAME.

In an action for personal injuries which were described in the complaint in general terms, as well as the general condition of plaintiff resulting therefrom, it was competent to show that after the injury she was unable to sleep, and lost in weight and appetite, although such matters were not specifically alleged as grounds for damages, where there was medical testimony tending to show that they were incidental to the injuries and plaintiff's physical condition resulting therefrom.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 141.]

3. MUNICIPAL CORPORATIONS—INJURY TO PERSON ON STREET BY AUTOMOBILE—ACTION FOR DAMAGES—EVIDENCE OF NEGLIGENCE.

In an action to recover for an injury from being struck by an automobile alleged to have been running at an excessive speed, it was competent to show what was done by those in charge of the machine, and what, if any, noise it made as it approached, as affecting the question of the alleged negligent rate of speed.

4. ERROR, WRIT OF—REVIEW—DISCRETION OF COURT—EXAMINATION OF WITNESS BY COURT.

The action of a trial judge in asking questions of witnesses is discretionary, and can only be reviewed for an abuse of discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3853–3855.]

5. MUNICIPAL CORPORATIONS—INJURY TO PERSON ON STREET—NEGLIGENCE OF DRIVER OF AUTOMOBILE—INSTRUCTIONS.

Where plaintiff alighted from a street car at a crossing, and while walking toward the curb was struck by defendant's automobile and injured, it was not error to charge the jury that, if the driver of the automobile saw the street car standing still at a point on the street where passengers customarily got on and off, it was his duty to apprehend that persons would, or might be, passing between the car and the curb and to exercise care accordingly.

6. SAME—CARE IN OPERATING AUTOMOBILE—USING WRONG SIDE OF STREET.

Where an ordinance, as well as general custom, required vehicles to keep to the right-hand side of the street, and plaintiff was struck and injured by defendant's automobile which had crossed the street and was proceeding on the left-hand side, it was not error to charge that the driver was bound to the exercise of greater care on that side to avoid injuring pedestrians than would be required if he had been on the other side.

7. SAME—ACTION FOR INJURY TO PERSON ON STREET.

It was also proper to instruct that if the driver of defendant's machine saw, or should have seen, that another automobile was approaching from the opposite direction, and that between the two, plaintiff, who was on foot, would be placed in a dangerous position, it was his duty to stop until the danger was past, and that his failure to do so rendered defendant liable, even though in keeping out of the way of the other machine plaintiff inadvertently stepped back too far and in front of defendant's.

**8. Same—Contributory Negligence.**

Whether a person walking from a street car near the center of a street to the curb was chargeable with contributory negligence which would prevent a recovery for an injury from being struck by a passing automobile because of a failure to look in both directions before starting across, is a question for the jury, to be determined under the particular facts and circumstances of the case.

**9. Damages—Husband and Wife—Injury of Wife—Action by Husband for Damages.**

In an action by a husband to recover damages on account of an injury to his wife, which for a time incapacitated her from performing her duties as housekeeper, evidence was not admissible to show the prevailing rate of wages for housekeepers, where plaintiff neither incurred nor became liable for any expense for such services, which were performed by a relative without charge.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 251, 490.]

In Error to the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 146 Fed. 588.

Arthur K. Wing and F. McIntyre, for plaintiff in error.

M. Goodman (Wm. Victor Goldberg, of counsel), for defendants in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. These two actions, one by a wife for personal injuries, and the other by her husband for loss of services, were by agreement tried together.

On January 10, 1903, Mrs. Garside got out of a south-bound Sixth Avenue car after it had come to a stop on the south side of Thirty-Fifth street. She was struck by an automobile going north, owned and operated by the defendant, either as she was walking towards the westerly sidewalk as she testified, or, according to other witnesses, as she was stepping backward to avoid another automobile going south, while walking towards the easterly sidewalk. We are entirely satisfied that the trial judge properly submitted to the jury the questions of the defendant's negligence and of Mrs. Garside's contributory negligence.

Many of the defendant's other exceptions are founded on the theory that certain medical and other testimony should have been excluded as not covered by the claim for injuries, in the complaint, which is as follows:

"(9) That, by reason of the said occurrence, the plaintiff was grievously hurt and injured, and suffered and still suffers intense pain, and became sick, sore, lame, crippled, and disabled, and so remains, and was injured internally and in her spine, hip, limbs, and knees, and sustained a severe shock and injury to her nerves, and was bruised and cut, and for a long time was confined to her bed, and sustained a dislocation of the kidney and other injuries to internal organs, and was otherwise bodily and internally hurt and injured, and still suffers from her injuries, and that she verily believes that for a long time she will suffer, and that such injuries are permanent, and that she has ever since been and still is, and for a long time will continue to be, unable to perform her household duties and to care for her children, and may never be able to perform her household duties, and that she may hereafter be unable to bear children."

A physician testified:

"I found that the right leg in front was far more sensitive than that of the left. I also found that the right leg, the patient lying upon a straight line drawn upon a table, the right leg was about half an inch longer than the left.

"Mr. McIntyre: I ask that that may be stricken out on the ground that it is not alleged in the complaint that in consequence of the injury sustained on the day mentioned the shortening of the leg followed."

We think that the general allegation in the complaint which described Mrs. Garside as lame, crippled, and disabled and injured in her limbs covered this claim. If the defendant wished to have a more detailed statement of the injuries, it should have demanded a bill of particulars.

The physician was also asked:

"Q. Assuming that this condition of Mrs. Garside which you discovered upon that examination had not existed prior to the 10th day of January, 1903, can you state from your examination with reasonable certainty what would have caused such a condition? (Objected to as incompetent, speculative, and conjectural.)

"By the Court: Q. Could you, if called upon, state with reasonable certainty the causes that would produce such a condition? A. I believe I can.

"Q. You may state that.

"The Court: It is not necessary here to give all the causes unless they require them. You may ask him if he can state with reasonable certainty whether or not a severe blow upon the hip, an injury there, would produce such a condition. A. I can so state."

These exceptions and some others of the same nature would have been good had the record remained in the condition it then was because the testimony would have been speculative, but the physician went on to testify in answer to a hypothetical question that in his opinion the accident described in that question actually was the cause of Mrs. Garside's condition.

Mrs. Garside was asked:

"Q. Were you able to sleep at this time?

"Mr. McIntyre: Objected to as incompetent and improper, and I object on the ground that the declaration does not state that insomnia existed."

The physician testified:

"The lady could not sleep any more.

"Mr. McIntyre: I move to strike that out. It is incompetent under the pleadings. The doctor cannot testify to a conclusion. He cannot state whether she could or could not sleep. * * *

"The Court: No. Would those conditions which you found, would they or would they not interfere with sleep? A. Most decidedly."

We think that this sleeplessness was an incident of Mrs. Garside's condition proper to be proved in support of the general charge in the complaint, although not specified therein, and that it was perfectly competent for the physician to testify that the conditions he found were such as would interfere with her sleep.

The defendant excepted to the plaintiff's giving her weight before and after the accident, because there was no claim for loss of weight in the complaint, and no evidence that the loss of weight was due to the accident. This again we think was but an incident of the plaintiff's condition, which was generally described in the complaint, and thus

it was entirely proper to admit such testimony. Similar exceptions were taken to testimony as to loss of appetite and emaciation.

A dressmaker was permitted to testify that she noticed a difference in Mrs. Garside's right hip after the accident. The witness testified that she found by measurement a difference of an inch and a half, but could not say whether the change was in the front or back. This witness, though not a physician, was entirely competent to testify as to her measurements, and, while unable to locate precisely the point where Mrs. Garside's right hip was larger than her left, her testimony confirmed that of a physician that he had found a swelling in the region of the injuries that made the right hip larger than the left.

A witness was asked:

"State what you heard, if anything, when the vehicle came across the avenue and went up.

"Mr. McIntyre: Objected to as improper, incompetent, irrelevant, and immaterial under the pleadings, upon the ground that the negligence charged in the complaint is not the failure to give the signal of approach but running at an excessive rate of speed; and I submit they must stand or fall on the language employed in their complaint. * * *

"The Court: I will overrule the objection, and give you an exception.

"A. When it came across the tracks it did not make any other noise than any other machine or wagon. He came right across the tracks and proceeded up on the west side, and, when he got up on the corner of Thirty-Fifth street, I heard a sudden stop from the machine, and then a noise."

We think that it was entirely proper for the trial judge to permit testimony as to what those in charge of the defendant's automobile did from the time it started to cross the tracks down to the accident. It is true there was no charge in the complaint of failure to give a warning, but whether the speed of the vehicle was too great, as charged, might depend, among other things, upon whether it was proceeding noiselessly, or whether the motorman was giving notice of his approach.

Another exception is on the ground that the trial judge examined and cross-examined witnesses at an unreasonable length, and thereby so prejudiced the defendant as to make a fair trial impossible. It must be admitted that a continual interposition by the trial judge in the examination of witnesses may prejudice the jury to the extent claimed; still the trial judge has a right, and, indeed, it is his duty, to see that the facts of the case are brought intelligibly to the attention of the jury, and to what extent he will intervene for this end is a matter of discretion. An abuse of such discretion is no doubt a cause for reversal. The exception taken in this case applies to the witness Lenehan, whose entire testimony covers 15 pages of the record, only 3 pages of which were taken up by the examination of the trial judge. We are of opinion that he did not abuse the discretion which the law gives him.

There are numerous exceptions to the admission of testimony because not properly in rebuttal, but this too, rests in the discretion of the trial judge, which we think was properly exercised.

The defendant's counsel excepted to the charge as follows:

"I desire to except to that portion of your honor's charge where you say that, if the car was at a standstill, it was the duty of the driver of the automobile to apprehend that persons would be likely to get off," etc.

· The trial judge said upon this point:

"Mrs. Garside had the right in the exercise of due care to cross from the point where she alighted to the westerly curb of the avenue, and in so doing to move northerly so as to avoid the Owl wagon. That was necessarily so; and, when the driver of the automobile came to that point—I think he admits he knew of it or saw it—then, of course, in proceeding with that car from which she alighted standing there, if it did stand there, persons getting off and moving in that narrow space, then the greater the care required on his part. ⁕ * * If the car was at a standstil, where passengers were accustomed to alight, to get on and off, it was the duty of the driver of the automobile to apprehend that persons would be or might be moving to or from it on the westerly side thereof, and he was under obligation to govern his conduct accordingly."

There was no error in this.

The defendant excepts to the answer of the trial judge to the plaintiff's request:

"If the driver chose to go up the west side of the avenue on account of an obstruction on the east side, he was bound to exercise greater diligence to avoid pedestrians than if he was proceeding on the right side of the street. * * ⁕ I have fully charged that, and I charge it again that he was bound to exercise greater care—greater caution—look more diligently, and proceed more carefully."

An ordinance had been offered in evidence requiring vehicles going up to take the east side of the street and going down to take the west, which is in accordance with the well-known practice. The defendant's automobile had, as its motorman testified, turned out from the east side of Sixth avenue on account of an obstruction to the east side, and was going up the west side. The trial judge had already said with reference to this situation:

"In turning to the left and proceeding up the avenue at this time in question northerly, it was his duty to be on the alert, use his eyes, his ears, his senses, to exercise care and caution, to look carefully ahead and proceed with caution, and also with reduced speed, unless he could see that there were no persons on the west side of the avenue and no conditions demanding it with whom he was liable to come in contact; and you are authorized to find, gentlemen, that on crossing to and in proceeding on the left-hand side going northerly reasonable and due care and caution required him to consider that persons, or even vehicles, might be there, hidden from his view by the cars, the street cars, either going south or crossing the street easterly or westerly, who were relying on the fact that there were no vehicles to the south of them, nearby, moving northerly on the west side, and that to come upon or to pass to that side suddenly from the east side, and at or near the south end, that is, within 50 or 60 feet of it—the south end of the car then on the southbound track—and to proceed northerly at a rapid rate of speed would be a careless and negligent, or even a dangerous thing to do; and you are authorized to find, you are not directed to find, but the evidence in this case and the law will justify you in finding, if you believe that there was negligence within the rules stated, * * * that his so crossing and moving on north was, under the existing and obvious conditions—that is, the conditions known to him and seen by him—a negligent act, or constituted negligence. You, gentlemen, are to find what the obvious conditions were."

This was substantially telling the jury that greater care must be exercised where there is greater danger, and leaving the determination of the whole question as to defendant's negligence to them, which we think was entirely proper.

The defendant next excepts to the following language in the charge,

which we find to be a correct exposition of the law (Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270):

"If the driver of that vehicle of the defendant could see that she was to be necessarily between the two automobiles as they passed each other within that narrow space of three, four, or five or six feet, as the case may have been, and could see that an emergency existed in which the plaintiff, Mrs. Garside, was required to act quickly and was required to avoid the automobile coming from the north, then if the driver of the defendant's automobile could and did see, or ought, in the exercise of ordinary care to have seen that Mrs. Garside must move to avoid the one coming south, and that it was imminently dangerous for her to be inclosed between the two moving automobiles as they passed each other, the one moving north and the other south, on account of the narrow space in which she would be inclosed, and that in avoiding the one moving south she would probably be struck, or must be struck, by the one he was driving, if he could see that and did see it, or if, in the exercise of ordinary care and diligence, within the rules I have stated, he ought to have seen it, then it was his duty to stop the automobile he was driving, if he could, the moment he saw the dangerous and critical situation, if it was such. It is for you to say. If such was the condition and Carey actually saw and apprehended the situation, or in the exercise of ordinary care under the conditions and surroundings he ought to have seen and apprehended the situation and danger and failed in his duty to stop the automobile when he might have done so, then the plaintiff, Mrs. Garside, was not necessarily guilty of contributory negligence which would prevent recovery if she did the best she could in the emergency and under the circumstances, even if she did necessarily move backward to avoid the automobile going south and in so doing made a mistake, ·if the automobile going south was there, and she may recover if you find the accident and injury to her was caused solely by the negligence of Carey, the driver of the defendant's auto, in not stopping the automobile before reaching her, when, in the exercise of ordinary care and caution under such conditions, he ought to have done so and might have done so, even if she erred in judgment in the dangerous position forced on her by Carey's negligence."

Only one other exception in the wife's action deserves consideration, viz., that to a portion of the charge instructing the jury that the plaintiff was not bound as matter of law to look both ways after alighting from the car. The trial judge said:

"And I charge you, gentlemen, while Mrs. Garside says she did look both ways, and she saw nothing coming from the south at this time, and that she looked up north and saw what she did, I charge you that, even if she did not, she was not as matter of law required to look both ways. She, in passing there, not knowing of the obstruction, not knowing of the tie-up, if that is the truth, would have no reason, perhaps, to believe that automobiles, or other vehicles, would come northerly, on the westerly side of the avenue, and so the degree of caution and care required of her would not be as great as it would have been had she known of a block. If she did not know of it—it is for you to say whether she did or not, taking all the evidence into consideration—the degree of care demanded by the conditions in her knowledge would not have been as great as it would have been had she known of that block, and that vehicles might pass up on the westerly side. All that you will consider in determining what her actions were."

We think this is a correct statement of the law of New York. The defendant points out that in the case of Barker v. Savage, 45 N. Y. 191, 6 Am. Rep. 66, Grover, J., held that the lower court erred in charging the jury that a person crossing a city street was not bound to look either way, but had the right to look straight before him. What the court was considering was a charge that as matter of law one crossing a street might look straight ahead, but was not bound

to look either up or down. But, because this was erroneous, it does not follow that a person in such position was as matter of law bound to look in both directions. In the case of railroad crossing this is the law of this court. Grand Trunk Ry. Co. v. Cobleigh, 78 Fed. 784, 24 C. C. A. 342. But in the case of street crossings it is for the jury to determine on all the circumstances whether a pedestrian not looking in both directions is guilty of contributory negligence or not. Moebus v. Herrmann, 108 N. Y. 349–354, 15 N. E. 415, 2 Am. St. Rep. 440.

We think the defendant's exceptions in the wife's action are without merit, but in the action of the husband we reluctantly conclude that the trial judge did fall into an error of law. The evidence was uncontradicted that during Mrs. Garside's disability her mother-in-law came into the family and took her place. Mr. Garside neither paid nor intended to pay her anything, and was under no legal obligation to her whatever. This being the case, we think it was error to admit testimony as to the prevailing rate of wages for housekeepers. Mr. Garside had neither incurred nor become liable for any sum for services of a housekeeper. In addition to any outlays actually incurred, he was entitled to be paid for his loss of conjugal fellowship, the society and affection expressed in the civil law by the word "consortium." But there is no market value for this. The jury would have to exercise their own common sense in determining what compensation Mr. Garside should have. They could not possibly be aided by testimony as to the prevailing rate of wages for servants, and, on the contrary, might well be misled by it.

The judgment in the action of Ginevra Garside is affirmed, with costs, and that in the action of John R. Garside is reversed and a new trial ordered, costs to abide the event, unless the plaintiff consent to reduce the judgment to the sum of $226, the actual expenses incurred, in which case the judgment is affirmed, with costs.