## ST. LOUIS & S. F. R. CO. v. CLAMPITT.

No. 5148.   Opinion Filed November 30, 1915.

Rehearing Denied January 11, 1916.

Second Rehearing Denied February 29, 1916.

(154 Pac. 40.)

1.   **APPEAL AND ERROR—Discretionary Acts—Examination of Witness—Questions by Judge.** The practice of the trial judge taking charge of a witness, and conducting a long cross-examination is not to be commended. Still it is the duty of the judge to see that the facts are brought out; and, unless it is apparent that there has been an abuse of discretion, and that the trial judge has shown his belief in the untruthfulness of the witness, or has given an intimation of his opinion on the facts, it is not prejudicial error.

2. **MASTER AND SERVANT—Injury to Employee—Negligence—Presumption.** The mere happening of an accident to an employee does not raise a presumption of negligence, but where an accident happens to an employee, resulting in his death, the manner of the occurrence and its surroundings may be shown, from which the jury may infer the manner and cause of the accident if the inference is a reasonable one.

3. **SAME—Injury to Brakeman—Cause of Accident—Question for Jury.** Where the evidence tends to show that a brakeman was killed by falling under a moving train, from which he had alighted in the performance of a duty, and there was evidence that the platform on which he alighted was defective in a manner that might have caused him to fall under the train, the question was properly left to the jury, although there was no direct evidence that the condition of the platform caused him to fall.

4. **TRIAL—Direction of Verdict—Evidence.** It is only when the evidence, with all the inferences that the jury can reasonably draw therefrom, is insufficient to support a verdict that the court is authorized to direct a verdict for the defendant.

5. **MASTER AND SERVANT—Death of Brakeman—Evidence of Custom.** Evidence that it was the habitual practice of brakemen at stations to alight from moving trains in the performance of their duties is admissible, especially when it is shown that it is impracticable to perform such duties without getting on and alighting from moving trains.

6. **SAME—Evidence — Subsequent Conditions.** Evidence of the condition of a platform three weeks after the accident is admissible when it is shown that no change has been made therein, except the usual wear occasioned by the elements.

7. **INSTRUCTIONS.** The charge in this case examined, and found free from error.

8. **TRIAL—Refusal of Instructions Covered.** Where special instructions are requested, which are fairly covered by the charge, it is not error to refuse to give them.

9. **TRIAL—Submission of Special Interrogatories—Right.** Under the provisions of article 7, sec. 21, of the Constitution, defendant is not entitled to have special interrogatories submitted to the jury in addition to the general verdict.

10. **MASTER AND SERVANT—Death of Servant—Action Under Employers' Liability Act—Apportionment of Damages.** Under

the provisions of Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913. secs. 8657-8665), the jury may return a general verdict in favor of the personal representative and need not apportion the damages among the beneficiaries.

(Syllabus by Devereux, C.)

*Error from District Court, Garfield County; James W. Steen, Judge.*

Action by Amanda V. Clampitt, administratrix and personal representative of the estate of B. F. Clampitt, deceased, against the St. Louis & San Francisco Railroad Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

This was an action brought by the defendant in error as administratrix of the estate of B. F. Clampitt, deceased, for damages resulting in the death of her intestate, by the negligence of the defendant, and the action is brought under federal Employers' Liability Act, April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. 1913, secs. 8657-8665). The petition is in the usual form, alleging that the plaintiff in error is a railroad corporation, engaged in interstate commerce, and that the intestate was a brakeman on a certain train which was carrying interstate shipments. The negligence on which the case was tried was that a platform at the station of Thomas, Okla., on the line of the road of the plaintiff in error, was defective, and when the plaintiff's intestate attempted to alight from the train at that point, owing to the defective condition of the platform, he fell under the cars of the train, and received injuries which resulted in his death. The answer was a general denial, and it alleges contributory negligence, assumption of risk, and also pleads certain rules of the plaintiff in error, regulating the conduct of its employees.

The evidence on the part of the plaintiff disclosed that the plaintiff's intestate was a brakeman on the freight train, engaged in interstate commerce, and that on arriving at the station of Thomas he was riding on the engine; that arriving at Thomas, preparatory to taking water, he alighted from the engine at the station of Thomas for the purpose of examining the records in the bill box, to see if there were any cars at Thomas which the train on which he was employed was required to take up and carry forward in transit so as to get to their destination. The evidence further showed that the platform at this place was a timber platform, which had been constructed in 1902, and was about 14 inches above the rails at this point; that some of the planks at this place where the plaintiff's intestate alighted were rotted, and had holes in them, and that there were some nails at this point protruding above the surface of the platform, one of them as much as an inch and a half. There was also evidence that the planks in the platform would spring when a person trod upon them, as much as an inch and a half, which was probably caused by the stringers or sleepers under the platform being rotten. There was also evidence that the life of a platform of this character was from 10 to 12 years, and that this platform had been erected in 1902, and the accident occurred in January, 1912. There was no direct evidence as to how the plaintiff's intestate fell under the train, the evidence on the part of the plaintiff tending to establish that it was on account of the defective condition of the platform, by striking his foot against a protruding nail, or by reason of the spring in the platform, or by reason of some of the planks in the platform being higher than others; that is, some thicker planks than those used in the platform had been placed there in repairing it, which

caused part of its surface to be elevated above the general level of the platform. The evidence of the defendant tends to contradict this evidence, and to show that the platform was in good condition; that there were no protruding nails, and that the cause of the fall of the plaintiff's intestate was that he lost his balance in alighting from the engine, and reeled along the platform for some 30 feet until he fell between the cars. The plaintiff in error also introduced its rules, which, as far as it pleads them and therefore, as we assume, are germane to the questions, are as follows:

"GENERAL NOTICE.

"To enter or remain in the service is an assurance of willingness to obey the rules.

"Obedience to the rules is essential to the safety of passengers and employees, and to the protection of property.

"Employees in accepting employment assume its risks.

"Rule No. 630. All persons entering into or remaining in the service of this company are warned that the business is hazardous, and that in accepting or retaining employment they must assume the ordinary risks attending it. Their attention is especially called to the fact that they are employed and retained with the express understanding and agreement that, in consideration of the compensation paid them, they will assume all risks of injury,' which may result to them by reason of any act, negligent or otherwise, done by any person employed by the company in the operation or maintenance of its railway, regardless of what department or line of service such person may be engaged in.

"Rule No. 631. Each employee is required to be responsible for his own safety, as well as to exercise the utmost caution to avoid injury to his fellows. Employees of every rank and grade are wanted to see for themselves before using them that the rolling stock, machinery or tools

which they are required to use are in safe condition or that they are so put before using.

"Rule No. 632. The company does not require or expect its employees to incur any risk from which, by the exercise of their judgment and personal care, they can protect themselves, but enjoins upon them and demands that they shall take time and use the means necessary to, in all cases, do their duty in safety.

"Rule No. 636. It is alike dangerous to assume that signals given to the engineman or fireman have been seen, and if seen, will be obeyed—when obedience to those signals on the part of the engineman or fireman is essential to the safety of an employee in the performance of his duty. He must know that the signal has been seen, understood and obeyed, before placing himself in a dangerous position—otherwise, without such knowledge he assumes all the risks of danger arising from any misunderstanding or disregard of signals.

"Rule No. 637. Employees are forbidden to stand on track and jump on engine or cars as they approach them, and are warned not to jump on or off trains or engines moving at a high rate of speed or to go between cars in motion to uncouple them, or to follow other dangerous practices."

After the evidence was in, the court charged the jury, and among its instructions excepted to are the following:

"(4) You are instructed that under the federal law it is further provided that any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from liability from negligence of the kind here charged by the plaintiff against the defendant, shall to that extent be void; but you are instructed that if, in fact, the said B. F. Clampitt knew, or by the use of ordinary care should have known, of the risks and hazards in question that resulted in his injury or death, if any, then the plaintiff could not

recover. Nor could she recover if Clampitt's death resulted from the ordinary dangers of his occupation, as these risks he assumed; but any perils due to the neglect and carelessness of the defendant and of which the said Clampitt could not learn by the use of ordinary care were not assumed by him.

"No. 5. Before you can find for the plaintiff it must appear from the evidence that the said B. F. Clampitt did not assume, as herein explained, any of the risks or dangers that resulted in his injury and death, and that at the time of such injury and death, the said B. F. Clampitt was injured and killed as the result of a defective platform of defendant's as charged, while assisting the defendant railroad company in carrying on interstate traffic, that is, traffic between one or more states, and in maintaining and operating an interstate railway belonging to defendant; that is, a railway extending continuously from one state to another, including the State of Oklahoma, and upon which the defendant was engaged in carrying on an interstate business as charged."

"No. 2. You are instructed that by virtue of an act relating to the liability of common carriers of a railroad to their employees enacted by the Senate and House of Representatives of the United States of America, it is provided that every common carrier by railroad, while engaged in commerce between any of the several states of the Union, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, or other equipment; and it is further enacted that the fact that the employee may have been guilty of contributory negligence shall not bar a

recovery, but the damages (in case of plaintiff's recovery) shall be diminished by the jury in proportion to the amount of negligence attributable to such employee.   Now, so far as the foregoing law applies to the rights of plaintiff to recover herein, you are instructed that the railway company was required to use ordinary care to furnish its employees a reasonably safe place in which to perform their work; and in this connection, you are instructed that, if you find from a preponderance of the evidence that at the time and place of the alleged injury to and death of the said B. F. Clampitt, the defendant's said depot platform at Thomas, Okla., was, and for some weeks prior thereto had been, to the knowledge of the defendant, defective and unsafe for ordinary use by defendant's brakeman and employees while rightfully engaged in the performance of their duties, because of loose boards therein, containing rotten places and protruding nails at the particular places in question as charged, and that the defendant was negligent, as charged, in so maintaining said platform in said condition, and that such negligence directly, proximately, and materially contributed to the death of said Clampitt, as charged, then you may find for the plaintiff and against the defendant, subject, however, to all of the other instructions herein given you."

The plaintiff in error also requested the following instructions, which were refused, and their refusal assigned as error:

"One who voluntarily enters the employ of another assumes all of the ordinary risks incident to such employment, and if injured while so employed by reason of a risk assumed, he cannot recover; neither can his personal representative recover in the event of his death."

"In entering the employ of the defendant, the deceased impliedly agreed, aside from his written agreement, to assume all of the risks incident to his employment as a brakeman.   If the station platform at Thomas was in a defective condition at the time the deceased was injured

and he knew of its being in such condition, or by the exercise of ordinary care he should have known of such condition, and he voluntarily remained in the service of defendant, then he assumed the risk of being injured therefrom and, if injured while so employed, the plaintiff herein cannot recover."

"In this connection, gentlemen of the jury, you are further instructed that, even though you believe that the station platform at Thomas was defective, and believe that the defendant was negligent in the maintenance of same, still your verdict should be for the defendant unless you find, by a fair preponderance of the evidence, that the negligence of the defendant, with respect thereto, was the direct and proximate cause of the death of deceased. You cannot return a verdict against the defendant upon mere speculation or conjecture—your verdict must be based upon the facts disclosed by the evidence."

"You are further instructed that if a servant has two ways of performing his work, one a comparatively safe way, and the other dangerous, and he adopts the dangerous way and is injured, he is held to have assumed the risk of being injured thereby, and cannot recover. If you believe from the evidence in this case, therefore, that the deceased had two ways of performing his work at the station of Thomas on the day he was injured, one of them comparatively safe and the other dangerous, and that he adopted the dangerous way and was thereby injured, then the plaintiff is not entitled to recover herein and your verdict must be for the defendant."

At the close of the evidence the plaintiff requested certain special interrogatories to be submitted to the jury in addition to their general verdict, which request was refused and exceptions saved.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

· *J. D. Houston, C. H. Brooks, C. H. Parker,* and *P. C. Simons,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The first assignment of error is that, owing to irregularity in the proceedings and conduct of the court, the defendant was prevented from having a fair trial. This assignment of error is based on the cross-examination of several of the defendant's witnesses by the court, but it is not necessary to set the cross-examination out in full. But we are not prepared to say that it constitutes reversible error. The practice of the trial court taking charge of a witness and indulging in a long cross-examination is not to be commended. In *N. Y. Transportation Co. v. Garside,* 157 Fed. 521, 85 C. C. A. 285, it is held:

"It must be admitted that a continual interposition by the trial judge in the examination of witnesses may prejudice the jury to the extent claimed. Still the trial judge has a right, and, indeed, it is his duty, to see that the facts of the case are brought intelligibly to the attention of the jury, and to what extent he will interfere for this end is a matter of discretion."

、 In commenting on this case in *Berwind-White Coal Mining Co. v. Firment,* 170 Fed. 151, 95 C. C. A. 1, the Circuit Court of Appeals for the Second Circuit, says:

"We found no abuse of discretion in that case. In the case at bar the cross-examination by the court was much more extended, and, presumably through some errors either in the stenographic report or in its transcription into the case on appeal, there are passages where it is difficult to tell whether a particular statement is made by a witness in response to the court's questions, or is a summary by the court of what he understood the witness to have already testified to. Nevertheless, on a careful study of the record, we do not feel warranted in reversing on this exception.

It may be proper, however, to expand somewhat the statement made in the Garside Case. Cases occasionally present themselves where a plaintiff or defendant is represented by incompetent counsel, and where the ends of justice require the trial judge to secure, so far as he can, a fair and full presentation of the case, so that the party who came into the court, expecting to have a full, fair, and just examination of the facts in controversy, will find his expectation realized. But where a party is represented by competent counsel—as the brief and oral argument demonstrate this plaintiff was—it would seem that the conduct of his side of the case had better be left to his own counsel. It is not unreasonable to assume that such counsel's study of the case and the information he possesses as to the personal equation of the different witnesses called against his client may make him a more competent cross-examiner than the trial judge, who never knew of the issues in the case till the pleadings were opened. Indeed, it might sometimes happen that a well-laid plan to discredit a hostile and unfair witness would be disarranged and rendered futile by premature cross-examination. The safer course would seem to allow the examination by counsel—direct, cross, redirect, and recross—to conclude, and then, if anything is obscure, if some point seems to be overlooked, or if suspecting false swearing, * * * the judge can, and indeed ought to, intervene so that the ends of justice may be subserved. Where, however, he takes the cross-examination out of the hands of competent counsel, there is danger that the jury, from this fact alone, may draw conclusions unfavorable to the witness and to the party on whose behalf the witness is called."

We think the above is the sound rule on this question; and, while trial judges have the undoubted right to interrogate witnesses, and in certain cases it is their duty so to do, yet care should be taken to frame the questions in such a manner as not to intimate to the jury that the judge has any opinion as to the facts of the case or the credibility of

the witness. While much of the evidence brought out by the court in its examination was not pertinent to the issues in the case, yet we cannot say, from an inspection of the record, and especially from the charge, that it probably resulted in a miscarriage of justice, or constituted a substantial violation of a constitutional or statutory right. Rev. Laws 1910, sec. 6005. Plaintiff in error relies on *City of Newkirk v. Dimmers,* 17 Okla. 525, 87 Pac. 603, but that case is distinguishable from the case at bar, as there the trial judge clearly intimated that the testimony of the witness was false, and that she had been procured by the plaintiff in error to falsely testify, but the record before us does not disclose matter to bring the case within the rule established by that decision.

The next assignment of error is that the court erred in overruling the demurrer to the evidence, and under this assignment we will also consider the refusal of the court to direct a verdict.

The question is not presented that the happening of an accident, in case of an employee, raises a presumption of negligence, and consequently the case of *Patton v. Texas & Pacific Ry. Co.,* 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, does not apply, for while there is no direct evidence showing what caused the deceased to fall, there was evidence showing the condition of the platform, from which the jury might draw the inference that it was the condition of the platform that was the proximate cause of the death of the plaintiff's intestate. In *Waters-Pierce Oil Co. v. Deselms,* 18 Okla. 107, 89 Pac. 212, it is held:

"Where an accident has occurred resulting in the death of all the persons immediately connected therewith and there is no direct proof as to how the accident occurred, the manner of its occurrence may be shown by circum-

stantial evidence from which the jury may infer the manner and cause of the accident if the inference is a reasonable, although not" a necessary, one.

And this case was affirmed on writ of error by the Supreme Court of the United States in 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453. In *Hayes v. Williams*, 17 Colo. 465, 30 Pac. 352, it is held that what is the proximate cause of an injury, whether it be the original negligence of one party or the intermediate negligence of another party, is ordinarily a question for the jury, to be determined from the minor associated facts and circumstances. In *Booker Tobacco Co. v. Walker*, 38 Okla. 47, 131 Pac. 537, it is held:

"It is only when the evidence, with all the inferences that the jury could * * * draw from it, will be insufficient to support a verdict for plaintiff that the court is authorized to direct a verdict for defendant; and, unless the conclusion follows, as matter of law, that no recovery can be had upon any view that can be properly taken of the facts which the evidence tends to establish, the case should be left to the jury under proper instructions."

And see *Creek Bank & Trust Co. v. Johnson*, 33 Okla. 696, 127 Pac. 480, and *St. L. & S. F. R. Co. v. Long*, 41 Okla. 177, on page 212, 137 Pac. 1156, Ann. Cas. 1915C, 432.

Applying the principle decided by these cases, it cannot be said that there was no evidence to go to the jury in this case. The plaintiff's evidence tended to prove that the platform was out of repair; that at the place where plaintiff's intestate alighted from the train there were nails protruding above the surface of the platform; that some of the boards had holes in them; some would spring when trodden upon, and some were rotten at the edge next to

the track. In the absence of direct evidence as to what caused the plaintiff's intestate to fall, it was within the province of the jury to consider this evidence, and the inference drawn by them that it was these defects that caused the accident is not an improbable one.

The next assignment of error complains of the admission of certain testimony. Among other things, the plaintiff was allowed to show that it was the habitual practice of brakemen to get on and off moving trains at stations, and this was admitted on the ground that the practice was so open and notorious that the superior officers of the corporation must have known of it. This evidence was competent, because it was in evidence that it was not practicable to do switching around stations without the brakeman getting on and off moving trains, and the rule of the plaintiff in error, introduced in evidence, only prohibits employees getting on and off trains or engines moving at a high rate of speed. The evidence was clearly admissible. In *U. P. Railway Co. v. Springstwen*, 41 Kan. 724, 21 Pac. 774, it is held:

"A railway company by a rule prohibited conductors and engineers from making flying switches. The deceased, a brakeman, working under the direction of an engineer, was not guilty of contributory negligence when the manner of switching by which he was killed had been the usual and customary way of doing the same, though he knew of the rule."

And see *K. C. Ry. Co. v. Kier*, 41 Kan. 662, 671, 21 Pac. 770, 13 Am. St. Rep. 311; *A., T. & S. F. R. Co. v. Slattery*, 57 Kan. 499, 46 Pac. 941; *Karns v. Railway*, 87 Kan. 154, 123 Pac. 758.

Other evidence objected to was that the plaintiff below was allowed to show that it was not practical to do switch-

ing at depots unless the brakeman got on and off moving trains, and that plaintiff was allowed to show the condition of the platform three weeks after the accident, there being no evidence that its condition had changed, except the natural depreciation from the elements. No extended discussion is necessary to show that this evidence was competent, nor do the other exceptions to the admission of evidence require extended notice, for, even admitting the violation of the rules, if there was any under the express words of the rule that employees must not alight from trains moving at a high rate of speed, the question was fairly left to the jury.

The next assignment of error pertains to the charge as given, and also to the refusal to give certain specific instructions asked by the defendant.

We have carefully examined the entire instructions given by the court to the jury, and also those requested by the defendant, and we find that the instructions as given present the questions fairly and impartially, and, as far as those requested were applicable, they are covered by the instructions given. The court did not commit any error that this court can review in refusing to submit the special interrogatories to the jury in addition to the general verdict. See section 21, art. 7, of the Constitution, construed in *King v. Timmons,* 23 Okla. 407, 100 Pac. 536; *Cook v. State,* 35 Okla. 653, 130 Pac. 300.

The last assignment of error is that the jury did not apportion the amount of the recovery between the wife and child of the deceased, but this very question was decided adversely to the plaintiff in error in *Central Vermont Ry. Co. v. White,* 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, where it is held:

"A general verdict for the plaintiff may be returned by the jury in an action brought by the administratrix under the federal Employers' Liability Act (35 Stat. at L. c. 149), for the benefit of the widow and minor children of the deceased employee, without apportioning the damages between the beneficiaries."

We, therefore, recommend that the judgment be affirmed.

By the Court: It is so ordered.