## LUSK et al. v. BANDY*

No. 9127.—Opinion Filed April 29, 1919. '

Rehearing Denied Oct. 7, 1919.

(Syllabus by the Court.)

**1. Master and Servant—Pleading—Federal Employers' Liability Act—Necessity.**

A case which by allegation and proof is brought within Employers' Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. secs. 8657-8665), is controlled by that act, although its provisions may not have been referred to in express terms in the pleadings.

**2. Commerce—Master and Servant — Personal Injuries—Interstate Commerce— Questions for Jury.**

Where a common carrier by railroad while engaged in interstate commerce maintains at one of its division points a roundhouse and turntable, where its engines being used in such commerce are stored in such roundhouse, and the boilers of such engines are washed therein, or on tracks adjacent thereto, and such engines are turned on such turntable, held:

(a)   That the roundhouse and tracks adjacent thereto and  the turntable so used are instrumentalities used by the railroad in interstate commerce.

(b)   That an employe of the railroad, whose duties were to wash boilers of the engines of the railroad so used was, while in the discharge of his duties and while in and around such roundhouses and on the premises of the railroad company adjacent thereto and in going to and from his work when ordered by the foreman of such roundhouse, also engaged in interstate commerce within the provisions of the Employers' Liability Act of Congress of April 22, 1908.

(c)   Where suit is brought by the personal representatives of such employe against the receivers of the railroad company and the petition of the plaintiff, by proper allegations and averments, alleges the death of the employe, and alleges that his death was proximately caused by the failure of the defendant to keep its turntable pit lighted, and the evidence was conflicting, though there was evidence reasonably tending to sustain the allegations of the plaintiff, the trial court properly overruled the demurrer of the defendant to the evidence of the plaintiff and the defendant's request for a peremptory instruction and properly submitted the questions of assumed risk by and the contributory negligence of the deceased to the jury, as well as the question of whether or not the deceased was engaged in interstate commerce at the time of the accident resulting in his death.

---

*Appealed to the Supreme Court of the United States.

**3. Master and Servant—Assumption of Risk —Federal Employers' Liability Act.**

Under the federal Employers' Liability Act (U. S. Comp. St. secs. 8657-8665), the law of assumption of risk is as that of the common law as it existed prior to the passage of said act, except where the common carrier violated some statute enacted for the safety of employes.

**4. Same—Question for Jury.**

On the issue of assumption of risk by a servant who has sustained injuries, where the evidence is harmonious and consistent and the circumstances are such that all reasonable men must reach the same conclusion, the question whether the plaintiff assumed the risk is one of law for the determination of the court; but where the facts are controverted, or are such that different inferences may be drawn therefrom, the question as to the assumption of the risk should be submitted to the jury under proper instructions from the court.

**5. Same—Risks Assumed — Negligence of Master.**

Under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. secs. 8657-8665]), the servant assumes all the risks of his employment which are known to him, or which could have been known by the exercise of ordinary care of a person of reasonable prudence and diligence in like circumstances.   Risks not naturally incident to the occupation, but which arise from the negligence of the master, are not assumed by the servant until he becomes aware of such negligence and of the risks arising therefrom, unless the negligence and risk are so apparent and obvious that an ordinary and careful person would observe the one and appreciate the other.

**6. Same—Issues for Jury.**

Evidence examined, and held, that under the facts of this case the question of assumption of risk was properly submitted to the jury.

**7. Appeal and Error—Verdict — Sufficiency of Evidence.**

In a civil action triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

**8. Trial—Refusal of Requested Instructions.**

Requested instructions of the defendant, which were refused by the trial court, examined, and held, that in each instance the instructions either failed to state the question of law involved correctly, or that the same was properly submitted to the jury by the trial court, and that therefore the refusal of the court to give such requested instructions was not prejudicial error.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by Francis Bandy, formerly Francis Jones, administratrix of the estate of Clay Jones, deceased, against James W. Lusk and others, receivers of the St. Louis & San Francisco Railroad Company. Verdict and judgment for plaintiff, motion for new trial overruled, and defendants bring error. Affirmed.

W. F. Evans, R. A. Kleinschmidt, and Jones & Foster, for plaintiffs in error.

Robt. Wimbish and W. C. Duncan, for defendant in error.

JOHNSON, J. This action was commenced on the 23d day of December, 1915, in the district court of Pontotoc county, by plaintiff, under the name of Francis Jones, as administratrix of the estate of Clay Jones, deceased, to recover of the defendants damages for the alleged wrongful death of the said Clay Jones. The action was instituted under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. secs. 8657-8665]). The petition, exclusive of caption and formal allegations, is as follows:

"That the defendants are the duly appointed, qualified, and acting receivers of the St. Louis & San Francisco Railroad Company, a corporation, and that said receivership is pending in the District Court of the United States for the Eastern Division of the Eastern District Court of the State of Missouri, and as such receivers the defendants are in charge of the property of said railroad company, said property consisting, among other things, of railroads, cars, stations, shops, roundhouses, turntables, engines, etc. That said receivers are operating said railroad, a line of which passes through the state of Oklahoma in the county of Pontotoc, and a line of which extends from Denison to the city of Sapulpa, in the state of Texas, to the city of Sapulpa, in the state of Oklahoma, and from the city of Sapulpa, in the state of Oklahoma, to the city of Monett in the state of Missouri, and that there are agents of the defendants in Pontotoc county upon which service of summons may be had.

"Second. Plaintiff further alleges that heretofore, to wit, on the 3d day of November, 1915, the plaintiff's decedent, Clay Jones, was in the employ of the defendants receivers in the capacity of a workman and boiler washer in the town of Francis, state of Oklahoma; that on said day and date, and for some time prior thereto, the said decedent was engaged as a boiler washer in washing boilers of engines belonging to the defendants receivers, which said engines were used by the defendants in both interstate and intrastate commerce and traffic from the town of Francis, state of Oklahoma, to the town of Denison, state of Texas, and points within the state of Missouri along defendants' line of railroad, said points being to this plaintiff unknown.

"Third. Plaintiff further alleges that while said decedent was so employed as hereinbefore set out in paragraph 2 of this petition, and for a long time thereto, the defendants receivers owned and operated in their yards at Francis, Okla., a turntable; that said turntable was used and operated by the defendants for the purpose of turning defendants' engines, which said engines were used by the defendants receivers in transporting freight and passenger cars from the town of Denison, to the town of Francis, and from the town of Francis to the town of Denison, and to other points both north and south of the town of Francis, which points are to this plaintiff unknown.

"Fourth. Plaintiff further alleges that it was the duty of her decedent, Clay Jones, to work —— hours a day for the defendants, and that his day's work terminated at 7 o'clock in the evening, and under the rules and regulations prescribed by the defendants, their agents, servants, and employes, who had supervision of said decedent, it was the duty of said decedent to report to one of the defendants' agents, servants, and employes and to 'register off' for the day's work; that said decedent had been accustomed to making such report and 'register off' on each and every day that he worked for a long time prior to the 3d day of November, 1915.

"Fifth. Plaintiff further alleges that on the said 3d day of November, 1915, at about the hour of 7 o'clock, said decedent had, during all said 3d day of November, 1915, been at work in the roundhouse or engine house washing boilers of engines belonging to the defendants; said engines having on said 3d day of November, 1915, and a few days prior thereto, been used by defendants in transporting its trains and cars from Francis, Okla., to Denison, Tex., and from Denison, Tex., to Francis, Okla., and it was contemplated by defendants, their agents, servants, and employes to again use said engines for the purpose of transporting and pulling its trains from Francis, Okla., to Denison, Tex., and from Denison, Tex., to Francis, Okla.; and that said night was very dark, and that plaintiff's decedent, upon leaving said enginehouse, fell into the pit in which said turntable was located, striking his head against the cement floor or bottom of said pit, fracturing his skull and breaking his neck, from which wounds said decedent then and there instantly died. Plaintiff further alleges that a short time prior to 7 o'clock, the time prior to which decedent was required to 'register off' for the day, one of the agents, servants, and employes of the defendants receivers notified said decedent that he would be required to return after supper and do extra work in his capacity as a boiler washer for said defendants.

"Sixth. Plaintiff alleges that said turntable was situated north and east of the engine house or place where said decedent was required to work, and about 20 feet therefrom, and that it was necessary for said decedent to pass around and near said turn-

table in performing his duties and especially in going to the place where he was required by defendants to 'register off' from the day's work.

"Seventh. That the defendants receivers, their agents, servants, and employes, well knew that the said turntable and the pit in which the same was situated was a dangerous place, and that all the defendants' agents, servants, and employes engaged in work similar to the work that said decedent was engaged in necessarily had to pass about, around, and near the said turntable, all of which was known to the defendants receivers, their agents and employes, and that said defendants receivers, their agents, servants, and employes, were guilty of gross neglect toward its workmen, and especially toward said decedent, in failing to keep and maintain any lights of any character in or about said turntable, and in or about the pit in which said turntable was situated, and that said neglect was the immediate and proximate cause of said decedent falling into said pit, and was the immediate and proximate cause of his death.

"Eighth. Plaintiff further alleges that said decedent was comparatively a young man, being at the time of his death about 37 years of age and capable of earning the sum of $2.50 per day by his labors; that he was attentive to his work and reasonably expected to become more efficient in his service and to earn greater sums of money per day; and that said decedent was a strong, healthy man, and with a reasonable expectancy of living to an old age, to wit, the age of 74 years.

"Ninth. Plaintiff further alleges that this plaintiff, administratrix, is the surviving wife of said decedent, and Myrtle, about the age of 12 years, Alger, about the age of 9 years, and Scott, about the age of 5 years, and Opal, of about the age of 15 months, are the surviving children of this plaintiff and said decedent, and that the children and this plaintiff are the sole and only surviving heirs at law of said decedent, and that the said decedent contributed his earnings to the support and maintenance of this plaintiff and said children, and would have continued to have contributed to their support for and during the balance of his life.

"Tenth. Plaintiff alleges that by reason of the acts and injuries and negligence of said defendants receivers, their agents, servants, and employes, this plaintiff and her said children have been damaged in the actual sum of $25,000.

"Wherefore, premises considered, plaintiff prays that said defendants and each of them be cited to answer this petition, and, on final hearing hereof, that she as administratrix have judgment for the sum of $25,000 for the use of herself individually and her said children, Myrtle, Alger, Scott and Opal, and that said judgment be declared a lien upon the property and funds of the St. Louis & San Francisco Railroad Company, a corporation, which may be in the hands of the defendants receivers, and that the same be established as a claim against said property and money, and for such other relief to which she may show herself entitled, whether in law or equity."

Thereafter, to wit, on October 2, 1916, the defendants filed their answer to said petition, which answer presented the following defenses, to wit:

First. General denial.

Second. Special denial of negligence, and allegation that the death of said intestate was caused solely and entirely by his own negligence and want of care.

Third. Contributory negligence.

Fourth and fifth. Assumption of risk.

On November 10, 1916, plaintiff filed her reply, consisting of general denial of new matter alleged in the answer.

The cause having been submitted to the jury, they returned into court the following verdict, to wit:

"We the jury drawn, impaneled and sworn in the above-entitled cause, do upon our oaths find for the plaintiff and assess the damages:

For Francis Bandy, formerly Jones__$ 200.00
For Myrtle Jones the sum of_____ 1,000.00
For Alger Jones the sum of_____ 1,200.00
For Scott Jones the sum of_____ 1,400.00
For Opal Jones the sum of_____ 1,800.00

$5,600.00
"W. C. Lee, Foreman."

Thereafter, on the 1st day of December, 1916, and within three days after the rendition of this verdict, the defendants filed in said cause their motion for new trial, which said motion was by the court overruled, and defendants excepted. Thereupon case-made was duly prepared, served, and settled as required by law, and the cause was brought to this court for review by petition in error. The errors relied upon are as follows:

First. The court erred in overruling defendants' demurrer to plaintiff's evidence.

Second. The court erred in overruling defendants' motion for peremptory instructions.

Third. The court erred in refusing to give to the jury the several written instructions requested by defendants and in refusing to give each of said instructions separately and severally.

Fourth. The court erred in giving to the jury the several instructions to which defendants excepted at the time and in giving each of said instructions separately and severally.

Fifth. The court erred in receiving the verdict of the jury apportioning the damages among the widow and minor children.

Sixth. The court erred in rendering judgment on the verdict of the jury and in rendering separate judgments in favor of the widow and minor children.

Seventh. The court erred in overruling the defendants' motion for a new trial.

The testimony in this case shows, in substance, that the railway company at the time of the accident, and for a number of years prior thereto, maintained a division at the town of Francis, Okla., where the accident occurred, at which it maintained and used, as facilities and instrumentalities in operating its trains, a roundhouse, turntable, and numerous tracks for the handling of its locomotives, and that engines coming from the north and south, respectively, were disconnected from the trains and stored in the said roundhouse and tracks and then others sent from said roundhouse and tracks to be used in place of the one stored, and that said line of railway extended from the town of Francis, Okla., south to Denison, Tex., and points further on in the state of Texas, and from Francis, Okla., north to Monett, in the state of Missouri, and other destinations north and beyond Monett, and that the deceased had been an employe of the said railway company at Francis, Okla., for about two years prior to the accident which resulted in his death, in the capacity of boiler washer. That for about one year after he began working for the company, he was on the night shift, and that about one year prior to the accident he had been upon the day shift, and that while upon the day shift he worked 11 hours, beginning at 6 a. m. and quitting at 7 p. m., and that the company had installed in a room adjoining the roundhouse a clock where employes were required to register on coming on duty and going off duty; that the deceased on the 2d day of November, 1915, the date of the accident, registered as follows: Morning, in, 6:41, out, 12:02, afternoon, in, 12:41, out, 7:07. His time card for that day also shows, hours, 11, amount, $2,00, and bears the indorsement: "Examined and distribution is correct. J. H. Huckins, Foreman."

J. H. Huckins, foreman of the roundhouse, testified:

"Last time I saw him on the 2d, night of the 2d, when found him next morning, morning of the 3d, and he and I put a switch engine out together about 5:03 p. m. I handled the engine and he held the table for me, and we went to the coal shed and got some coal, and back to the water tank, and he taken water on the engine, and he throwed the switch for me, and I back out on what was called the out-bound track after this engine was set out for night service. I never saw him any more after that until next morning. I told him after we got through with this switch engine that I wanted him to come back and wash the pile driver that was coming in off the road for a washout, but we would call him when the pile driver got in, that I did not know what time they would get in, might be 12 o'clock and might be 1 o'clock. Did not have him called for that work, but told Mr. Johnson, the night foreman, about what I told the deceased about 8:30 ·or 9 o'clock, and told him to have deceased called."

E. C. Johnson, night foreman, testified:

"That the deceased was supposed to work in the roundhouse and by the side thereof. Once in a while they washed boilers by the side of the roundhouse over by the old rip track. Saw deceased about 7 p. m. in the clock room; seemed to be checking out. The foreman told me about 7:15 or 7:20 the deceased would be back that night to wash the pile driver boiler; suppose the deceased was then out around the roundhouse. He told me he was coming back to wash the pile driver boiler. I said, All right. The last time I saw him was about 9 o'clock. About that time he went out the west door of the roundhouse. The pile driver came in something like 9 o'clock. The deceased was there then. Did not give him any instructions about washing the pile driver and never did have him called for it. I did not have him wash it, because I thought he was drinking. That he (Johnson) and his brother washed the pile driver."

This was contradicted by Marvin Johnson, who said:

"He and Bob Scoggins washed it about 11 or 12 o'clock; that they used torches for ·light, which they got in the storehouse where they kept them for use by employes; that there were no lights on the turntable that night; the pile driver was on the old rip track; used a hose that was connected to fountain No. 1 inside the roundhouse through a window on east side about 10 steps to where the pile driver stood, or hardly. so far. It was about 20 steps from an oil lamp on a post, which light sometimes burned and sometimes did not, but could not get light from it if it had been burning. We used torches for light. Was dark around the roundhouse before I went to work. The storeroom, with the clock room in controversy, was at the southeast corner of the roundhouse."

The evidence places the deceased going out of the west door of the roundhouse at about 9 o'clock at night after the pile driver was in and set on the old rip track east of the roundhouse about 10 steps, or maybe less, and about 20 steps southeast of the turntable and pit, which was not lighted, and it was dark in and around there. It was testified that on that occasion there were no lights to the turntable, and had not been for· several

months prior thereto; that sometimes an oil lamp was kept burning and sometimes two, neither of which was sufficient to light the turntable itself and the tracks surrounding; that frequently neither light was kept burning; that numerous trains arrived in the nighttime from the north and south, engines were changed, and boilers washed. While other witnesses testified that the premises were kept lighted at all times in the night, and were so lighted in the night of November 2d.

The witness Homer Kellogg testified that the deceased worked on several engines, washing the boilers on the date of his death, and that about 6 p. m. of said day he assisted the deceased in handling a passenger engine; the deceased changing the water, and he (Kellogg) building the fire therein.

The witness Marvin Johnson testified that he and one Bob Scoggins washed the boiler of the pile driver on the night of November 2d, at about 11 or 12 o'clock; that the deceased did not assist them; that there were no lights at the turntable or where they washed the boiler, for they used torches to furnish them light; that he worked on the night shift; that when they washed the boiler of the pile driver it was setting on the old rip track on the east side of the roundhouse, about 10 steps therefrom; that it was the custom of the boys working on the night shift to knock around over the roundhouse grounds and turntable; and that no objections were ever made by the foreman or the man in charge. The same condition had existed for three or four months prior to the accident.

Barney Bernard, an employe of the railway company, testified that the pile driver in question was used in driving piling out on the Frisco road, of the branch line running from Denison, Tex., to Sapulpa, Okla.; that the tracks were used for the transportation of freight and passengers over the country from points both within and without the state. He testified that the engine No. 1247 was handled by the deceased on the day preceding his death; that it came from the south going north, and pulled 21 loads and a caboose; and that the loads came from Hugo, and some from Sherman, and they were going to St. Louis, and they started from Sherman on that day; also, he handled engine No. 3704, which was a switch engine, and it hauled all of aforesaid cars brought in by engine No. 1247; that engine No. 628 was the engine that was set in for that night, and took out the pile driver the next morning.

J. T. Bryant, an employe of the railway company, testified that he was an engine wiper; that he knew the deceased; and that the deceased washed the boiler of engine No. 3704 that evening.

The defendants' third and fourth assignments of error, that the court erred in refusing to give certain requested instructions and in giving instructions to which the defendants objected and excepted at the time, will be here considered together.

We find that the defendants' requested instructions which were refused by the court and excepted to by the defendants, 1 to 8, inclusive, in effect requested that the court charge the burden of proof upon the plaintiff to establish all material allegations in her petition, including the allegation that both the railway company and the deceased were engaged in interstate commerce at the time of the accident complained of, by a preponderance of the evidence, and while said requested instructions substantially, for the most part, correctly stated the law, and were called for by the pleadings and evidence in the case, yet we find that the court covered the points by his instructions to the jury, and hence, under the decisions of this court, no reversible error was committed in refusing to give the requested instructions in the form asked by the defendants.

From an examination of the record we think that, by both the allegations and proof in this case, it is clear that the same is brought within the provisions of the act as hereinafter quoted, and is controlled by that act, although its provisions may not have been referred to in express terms in the pleadings.

There was testimony reasonably tending to show that the railway company and the deceased, at the time of the accident complained of, were engaged in interstate commerce. This being true, it therefore follows that the trial court did not err in overruling the defendants' demurrer to plaintiff's evidence, and defendants' request for peremptory instructions. St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; North Car. R. Co. v. James A. Zachary. 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Hayes v. Mich. C. R. Co., 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410.

The plaintiff alleged in her petition that the defendants owned and operated in their yards at Francis, Okla., a turntable for their use, being operated by the defendants for the purpose of turning its engines, which engines were used by the defendants in transporting freight and passenger cars from the

town of Denison, Tex., to the town of Francis, Okla., and from the town of Francis, Okla., to the town of Denison, Tex., and other points both north and south of the town of Francis, Okla., which points were to the plaintiff unknown.

The acts of negligence of the defendants complained of by the plaintiff were the defendants' failure to keep and maintain any lights of any character in or about said turntable, and in or about the pit in which said turntable was situated; alleging that said negligence was the immediate and proximate cause of the deceased falling into said pit, and was the immediate and proximate cause of his death.

The Act of Congress of April 22, 1908, provided:

"Every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, * * * dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

"Sec. 3. That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.

"Sec. 4. That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The defendants complain because the court refused requested instructions Nos. 9 to 16,

inclusive. Nos. 9 and 10 go to the question of assumed risk and in substance and effect advise the jury that this action was brought under the federal Employers' Liability Act, and that under the act the assumption of risk by the employe was a complete defense, and that if the deceased was familiar with the defendant's premises, and went upon the same in the dark, and in consequence of such darkness fell into such pit and was killed, then he would be held as a matter of law to have assumed the risk, and that the plaintiff would not be entitled to recover damages for his death, leaving out of the situation entirely the question of the defendants' negligence and the purpose for which the deceased went upon the premises at the time of the accident.

No. 11 instructed the jury that if the defendants maintained a roundhouse, engine pits, and turntable, and that the same were necessary appliances to the conduct of their business, and was constructed and maintained in accordance with the standard ordinarily maintained by the railroads in the country, such act would not constitute negligence on the part of the defendants. We find that the question there presented was substantially submitted to the court in paragraphs 5 and 6 in the general charge to the jury, and that the court's failure to give requested instruction No. 11, as requested by the defendants, was not error.

Requested instruction No. 12 informed the jury that if the jury believed from the evidence that, during the time the deceased was employed by the defendants, no material change had been made in the methods of maintaining such turntable pit, and in lighting the premises adjacent thereto, the deceased would be held as a matter of law to have assumed the risk and the verdict of the jury should be for the defendants. This was the same proposition involved in requested instructions 9 and 10 and was likewise correctly stated in the court's general charge to the jury, and the court committed no error in refusing the instruction asked for the reason heretofore stated.

Requested instruction No. 13 was in effect the same as No. 12, and the court committed no error in refusing the same for reasons heretofore stated.

Requested instruction No. 14 instructed the jury that if it found from the evidence that the deceased left the defendants' roundhouse by the west door thereof with the intention of going to his home, and that in order to reach his home he would have to proceed along a public street or highway, passing said roundhouse in the direction of

his home, and if the jury further believed from the evidence that the turntable pit into which he fell was not situated so near said highway as to constitute substantially a part thereof, defendants would in that case owe deceased no duty with reference to the maintenance or the lighting of said pit.

The questions there, as stated, would have been highly confusing to the jury because the same were not applied to the facts in evidence and because the route of travel defined would neither have proceeded along a public street or highway nor would it pass the roundhouse, as the evidence showed that the turntable pit was situated at a point some 50 feet at a right angle from the direct line described in the instruction, and such instruction entirely ignored the question as to why the deceased was upon the premises at the time of the accident, whether he was there properly in the discharge of his duties to the defendants, or as a naked trespasser, and hence there was no error committed in refusing such instruction.

Defendants' requested instructions Nos. 15 and 16 cover the question as to the reason why the deceased was upon the premises at the time of the accident complained of, as to whether he had reported there in the discharge of his duties, or whether his services had been completed for the day, and whether he had completed his day's work and was upon the premises for purposes other than in the discharge of his duties, and while there received his injuries.

These questions, we think, were properly submitted to the jury by the court in its general charge, and so there was no error in refusing the requested instructions Nos. 15 and 16.

This court has frequently held that, even though the requested instructions state the questions of law correctly, there is no error in refusing the same when the court properly submits the questions in his general charge to the jury, and, when taken as a whole, it fairly submits to the jury all the law applicable to the case. Citizens' Bank of Wakita v. Garnett et al., 21 Okla. 220, 95 Pac. 755; Finch et al. v. Brown, 27 Okla. 217, 111 Pac. 691; Higgins v. Street, 19 Okla. 45, 92 Pac. 153; Coalgate v. Hurst, 25 Okla. 588, 107 Pac. 657.

We think that the turntable, as the same was shown from the evidence to have been constructed and maintained by the railway company, was one of the instrumentalities used by the railway company in the business of interstate commerce, and was included in the provisions of the act of Congress of April 22, 1908, in which it is provided that every common carrier by railroad, while engaged in commerce between the states, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employe, to his or her personal representatives for the benefit of the surviving widow and children of such employe for such injury or death resulting wholly or in part from the negligence of any of the officers, agents, or employes of such carrier, or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, tracks, roadbeds, works, boats, wharves, and other equipment, and the negligence charged by the plaintiff as a violation of the provisions above quoted is that it failed to keep and maintain any lights of any character in or about the turntable or in or about the pit in which said turntable was situated, and that such negligence was the immediate and proximate cause of the injury complained of, charging, in effect, a violation of the duty imposed upon the defendants by the terms of the act referred to, which act of violation was charged to be the proximate cause of the death of the plaintiff's decedent. So under section 3 of the act of Congress:

"That in all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employe, or where such injuries have resulted in his death, the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe: Provided, that no such employe who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe."

And section 4 provides:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of, any of its employes, such employe shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employes contributed to the injury or death of such employe."

The law applicable to the defense of assumption of risk under the federal Employers' Liability Act is that of the common law as it existed prior to the passage of said act, except where the common carrier has

violated some section of the statute enacted for the safety of employes.

On the issue of assumption of risk by a servant who has sustained injuries, where the evidence is harmonious and consistent and the circumstances are such that all reasonable men must reach the same conclusion, the question whether plaintiff assumed the risk is one of law for the determination of the court; but where the facts are controverted, or are such that different inferences may be drawn therefrom, the question as to the assumption of risk should be submitted to the jury under proper instructions from the court. 26 Cyc. 1479; 18 R. C. L. sec. 166, p. 676.

Upon these issues the court instructed the jury as follows:

"(5) If you find by a preponderance of the evidence that the deceased was engaged in interstate commerce and that he was on the yards of the defendants preparatory to commencing actual work, and that the defendants kept and maintained a pit in said yards, and by for any reason in the discharge of his said duties, to go in around or near said pit or excavation, if you find such pit or excavation was kept, and that the defendants negligently failed to keep said pit lighted, and the deceased fell into said pit and lost his life, and that the negligence of the defendants in failing to maintain lights to light said pit was the proximate cause of the injury to the deceased, then your verdict will be for the plaintiff, unless you find for the defendants under other instructions herein given."

(Defendants except. Exceptions allowed.)

"(6) You are further instructed that if you find that from the evidence in this case that the pit alleged was open, and that the location of the same was known to the deceased, and that said pit was an instrumentality of his employment, then you are instructed that the deceased assumed the risk of the danger connected with said open pit.

"On the other hand, if you find that said pit was disconnected and was not incident to the discharge of the duties of the deceased, and was not one of the instrumentalities incident to his employment, then the deceased should not assume such risk."

(Defendants except. Exceptions allowed.)

"(7) You are further instructed that in case you find that the negligent acts of the deceased, if any, contributed to his death, that such negligence, if any, on the part of the deceased would not entirely relieve the defendants of liability for his death, provided you find by a preponderance of the evidence that the defendants were guilty of negligence in keeping and maintaining such unlighted excavation or pit, but that such contributory negligence of the deceased diminishes his right to recovery in proportion to the amount of negligence attributable to said deceased employe; therefore, if you reach that point in your deliberations where you find it necessary to consider the defense of contributory negligence, that negligence of the deceased is not a bar to recovery, but that the damages shall be diminished by the jury in proportion to the negligence of the deceased as compared with the combined negligence of himself and the defendants."

(Defendants except. Exceptions allowed.)

The issue as to whether or not, at the time of the accident complained of, the deceased was engaged in interstate commerce in the sense that his status was such as to bring him within the provisions of the federal Employers' Liability Act, was made by both the pleadings and the evidence, and that issue was submitted to the jury by the court in paragraph 4 of his charge, which is as follows:

"You are instructed that if you find from a preponderance of the evidence in this case that the deceased on the 2d day of November, 1915, was engaged as boiler washer in the town of Francis, Okla., in washing boilers used to haul commerce from the state of Oklahoma to another state, or from another state to the state of Oklahoma, and that he registered off about 7 o'clock p. m., and that he was requested to return to wash the boiler of the pile driver, which boiler was used in hauling said pile driver, or commerce from the state of Oklahoma to another state or from another state to the state of Oklahoma, and that in obedience to said duty he returned to the defendants' yards in Francis preparatory to entering upon the duty of washing said boiler, and that while there, waiting to further engage in said duties as boiler washer, in that event he would be engaged in interstate commerce."

(Defendants except. Exceptions allowed.)

We think this instruction sufficiently informed the jury as to the law upon the question involved, and that the court committed no error in giving the same.

The defendants' requested instructions which were refused by the court 9 to 15, inclusive, were upon the question of assumed risk and contributory negligence.

The rule in the United States courts is that a servant assumes all the ordinary risks of his employment which are known to him, or which could have been known to him with the exercise of ordinary care by a person of reasonable prudence and diligence under like circumstances, and that risks which are not naturally incident to the servant's occupation, but which arise from the negli-

gence of the master, are not assumed by the servant until he becomes aware of such negligence and of the danger arising therefrom, unless the negligence and the risks are so apparent and obvious that an ordinarily prudent person would, under the circumstances, observe the one and appreciate the other. C., R. I. & P. R. Co. v. Ward, 68 Oklahoma, 173 Pac. 212; C., R. I. & P. v. Hughes, 64 Oklahoma, 166 Pac. 411; Dickinson, Rec'r. v. Granbery, Adm'r., 71 Okla. 174 Pac. 776; Gila Valley G. & N. Ry. Co. v. Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521; Seaboard A. L. R. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; M., O. & G. R. Co. v. Overmyre, 59 Okla. 723, 160 Pac. 933; K. C., M. & O. Ry. Co. v. Roe, 72 Oklahoma, 180 Pac. 371.

The defendants complain in their fifth and sixth assignments of error that the court erred in receiving the verdict of the jury apportioning the damages among the widow and minor children, and in rendering judgment upon the verdict.

We hold that there is no merit in these contentions, as a procedure in that respect has been approved in the following cases: St. L. & S. F. R. Co. v. Clampitt, 55 Okla. 686, 154 Pac. 40; Central Vermont Railway Co. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Norfolk & W. R. Co. v. Stevens, 97 Va. 631, 34 S. E. 525, 46 L. R. A. 367; I. & G. N. R. Co. v. Lehman (Tex. Civ. App.) 72 S. W. 619.

The defendants complain of the ruling of the court in admitting and rejecting testimony upon the trial of this case.

We have examined the record and fail to find wherein prejudicial error is shown in the ruling of the court upon the law questions presented during the trial. The evidence in this case was conflicting, and in such cases where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial error is shown in the instructions of the court and its rulings upon the law questions presented during the trial, the findings of the court will not be disturbed on appeal. Bunker v. Harding et al., 70 Oklahoma, 174 Pac. 749; Blasdel et al. v., Gower, 70 Oklahoma, 173 Pac. 644; Shawnee Nat'l. Bank v. Pool, 66 Oklahoma 167 Pac. 994; Chicago, R. I. & P. Ry. Co. v. Pruitt, 67 Oklahoma, 170 Pac. 1143.

The judgment is affirmed.

All the Justices concur.