## OKLAHOMA CITY-ADA-ATOKA R. CO. v. KIRKBRIDE.

No. 24497. Nov. 10, 1936.

Rehearing Denied March 16, 1937.

O. E. Swann and Blakeney & Ambrister, for plaintiff in error.

Gomer Smith, Fred M. Hammer, and M. J. Parmenter, for defendant in error.

PER CURIAM. Defendant in error, as plaintiff, sued plaintiff in error in the Oklahoma county district court for the recovery of damages for personal injuries. The case comes here on appeal from a judgment for the plaintiff. The substance of plaintiff's petition in the lower court is that while he was engaged in the performance of his duties

as head brakeman for the defendant railroad company, in the nighttime of June 27, 1929, and while engaged in switching cars at what is known as "the old passing switch" at Hazel, Okla., he sustained the injuries complained of by reason of the negligence and carelessness of the defendant, in that it 'failed to furnish him with a reasonably safe place in which to work; that at the place where he was working at the time of his injury, to wit, the sidetrack at Hazel, the ties on said sidetrack extended out from the track 18 inches to three feet, and in places the ties extended out into the path or space in which a brakeman was compelled to travel or run in coupling and uncoupling cars; that the space between the ties was not filled in and was rough and uneven and in a condition rendering it unsafe for the plaintiff in the performance of his duties, and by reason of such unsafe condition he was caused to stumble and fall and injure himself in the manner described in his petition.

The defendant's answer was a general denial and also alleged contributory negligence and assumption of risk. The evidence shows that the train in question on which plaintiff was head brakeman at the time of the injury contained shipments moving from Illinois and Indiana to points in Oklahoma, and in the briefs it is conceded by the parties, plaintiff and defendant, that the cause is governed by the Federal Employers' Liability Act.

The evidence shows that near the point where the plaintiff sustained his injury the switch line left the main railroad track, and that in the construction of such switch a set of switch ties had been used which the defendant claims were standard ties, but there is a diversity of evidence as to whether or not the switch ties were standard. However, at the remotest point in the switch where the switch left the main track, the last of the switch ties extended 36 to 40 inches from the track. The next tie extended only 16 to 18 inches from the rail, thereby forming an abrupt angle in the outer edge of the tie line, in the formation of which the switch ties extended out beyond the other ties in said switch a distance of 18 to 22 inches. It was at the location of this angle that plaintiff had his accident. At the time of the accident he was engaged in "cutting out" one of the cars in a moving freight train and was running along the railroad track by the side of a moving train, and it is plaintiff's contention, which there is evidence to sustain, that when he reached the point where the last switch tie abruptly extended 18 to 22 inches beyond the tie line along which he had been running in order to cut out the car, he stumbled on the extended tie and was thrown and injured.

The plaintiff complains, among other things, that the abrupt extension of the switch ties for a distance of 36 to 40 inches from the rails caused a dangerous and unsafe condition in the path by the railroad track along which he was required to run in the performance of his duties as switchman in coupling and uncoupling cars, a duty in which he was engaged at the time of his injury; that the extended ties were an unsafe and dangerous obstruction in his pathway, and that it was not reasonably necessary or proper for them to have extended such a great distance from the rails, and that, in substance, the switch was negligently constructed. The contention of the plaintiff was disputed by the defendant, and a decided issue was made upon this question before the lower court.

In his testimony at the trial plaintiff admitted that after his injury he stated to an insurance company and to the railroad company in his report of the accident different causes of his injuries than that upon which he relied in his suit against the defendant, to wit, that he fell from an oil car 'and struck an end tie, causing him to slip and fall, bruising his leg, and other discrepancies. The plaintiff also testified that he had been engaged as a railway brakeman for 30 years; and had been working for the defendant and making runs over the point at which he was injured for eleven months; that he worked at least half of the time as brakeman before he was hurt; that the defendant had only 133 miles of track, and that he passed the sidetrack both ways going and coming; that he had many times picked up and set out cars on the particular sidetrack where the injury occurred; that he had seen the objectionable tie condition many times before he was injured, but did not pay any attention to it, but that it was enough to attract his attention if he had looked.

The plaintiff testified that his principal injury was to his ankle and leg; that he could not explain his injury, but that it hurt him in the hip and groin; that there was a place on his shin about the size of a small egg when the injury first occurred; that he continued to suffer great pain at the time of the trial; that after his injury he continued, through the help of another, to per-

form his duties until the train arrived at Atoka and returned to Oklahoma City; that he was treated by a doctor for about 30 days, who then sent him to another doctor who did not treat him; that he was subsequently treated by another doctor.

Testimony was given that while the plaintiff was in the hospital he suffered an attack of gall bladder colic, and that he had other attacks of such trouble before he was injured.

Plaintiff in error urges that there was no evidence of negligence; that the plaintiff assumed the risk of his injuries, and there was no evidence that the physical condition complained of is the result of the accident complained of, and that by reason thereof the trial court erred in overruling defendant's demurrer to the evidence and in refusing to instruct the jury to return a verdict for the defendant. It is contended that there was only a scintilla of evidence of negligence and that under the rule applicable under the Federal Employers' Liability Act, such a degree of evidence would not warrant a submission of the question to a jury. The defendant in error further contends that under the undisputed evidence in the case the ties, which were the alleged cause of the accident, were standard equipment for the purpose for which they were used, and that a railroad company not being bound to maintain its track in the best or safest condition for the use of its employees, its selection of a standard method of construction was warranted, and that the court will not prescribe standards in respect to the method of constructing its switches or leave engineering questions involved in such matters to the varying and uncertain judgment of juries. Delaware L. & W. Railway Co. v. Koske, 73 L. Ed. 578, syllabus 5, 6, and 7.

We think there was some evidence in the case to the effect that the tie construction of the switch was not "standard," but, admitting that it was, the rule contended for does not have a controlling application in this case so far as the question of negligent construction of the switch or construction in such manner as to make it unsafe for a switchman, is concerned. The railway switch tie is such a simple device that if in some particular place the tie of "standard" length would unnecessarily extend so far out from the rails which it supports as to be in a path or runway of a brakeman in coupling and uncoupling cars, and thereby be a dangerous obstruction over which the employee in the performance of his duty would be likely to stumble while

in the exercise of ordinary care for his own safety and be thereby injured, a master could very easily have the tie cut and placed so as not to extend out dangerously, or by filling in around them the surface level could be brought to a point that would eliminate the danger.

The record in this case shows a condition respecting the alleged tie obstructions that reasonable persons, in the absence of convincing proof to the contrary, might reasonably say was dangerous to workmen engaged as plaintiff was. The ties were several inches above the surface of the ground and not filled in between, and there was no evidence that the extra length of the ties was necessary or proper for the construction or maintenance of the switch. There was evidence that the plaintiff did stumble over an extending tie while engaged in the performance of his duties, and, in the absence of evidentiary explanation of the condition consistent with safety or reasonable necessary requirement, reasonable men might reasonably say that the condition complained of was due to negligence on the part of the defendant company rendering the switch or side track unsafe and dangerous for brakemen.

Under the record there was more than a "scintilla" of evidence with reference to negligent construction of the switch, making the same unsafe for a brakeman switching cars; that the rule with reference to the "scintilla" of evidence as applies in the case of Gunning v. Cooley, 281 U. S. 90, 74 L. Ed. 720, and Pennsylvania Railroad Co. v. Chamberlain, 77 L. Ed. 819, is not applicable, and we, therefore, hold that the evidence upon this phase of the case was sufficient to take the case to the jury.

Pence v. Langdon, 25 L. Ed. 420, 99 U. S. 578:

"A direction to a jury to find a verdict in favor of a party can be properly given only when the state of the evidence is such as to leave no room for doubt that it is the duty of the jury to find accordingly."

The fact that the plaintiff gave testimony respecting the cause of his injuries which conflicted with earlier statements made by him in writing could not justify the trial court directing a verdict or sustaining a demurrer, as such circumstances go only to the weight and credibility to be attached to the witness' evidence, and are not a question of law for the court, but are for the jury. Gunning v. Cooley, 74 L. Ed. 720; Thrall v. Pere Marquette Ry. Co. (Mich.) 241 N. W. 235; Seekatz v. Foltz, 118 Okla. 159, 247 P. 413.

Plaintiff in error urges that plaintiff's injuries, if any, were due to a risk which had been assumed by him, and they relied upon the plaintiff's testimony. We have heretofore set out the condition of the switch in question and the duties of the plaintiff, and do not deem it necessary to further comment upon same except to say that the evidence was sufficient to support the plaintiff in his contention that the switch was constructed in such a manner as to make it unsafe for a brakeman in coupling and uncoupling cars, in that the ties extended out unnecessarily in places and in the path of a brakeman necessary to be traveled in coupling and uncoupling cars. However, the evidence shows that plaintiff is a man 52 years of age, of 30 years' experience as a railroad brakeman, and, as heretofore set out, he had been engaged in running by this switch and in setting in and cutting out cars on this switch for eleven months before the alleged injury, and he assumed the risk, and under the testimony in the case it was a question of law for the court and not a question of fact for the jury, and the trial court should have directed a verdict on the ground of assumption of risk.

York v. St. Louis-San Francisco Ry. Co. (Mo.) 62 S. W. (2d) 475:

"To charge employee with assumption of risk, attributable to defect due to employer's negligence, it must appear that he knew that defect endangered his safety or that danger was so obvious that ordinarily prudent person would have appreciated it. Federal Employers' Liability Act (45 USCA. secs. 51-59)."

In the opinion the court says:

"The rule is well settled by controlling decisions of the United States courts that under the federal statute a servant assumes extraordinary risks incident to his employment or risks caused by the master's negligence which are obvious or fully known and appreciated by him. Boldt v. Penn. R. Co., 245 U. S. 441, 445, 38 S. Ct. 139, 140, 62 L. Ed. 385, 389. If the hazard would be plainly apparent to a reasonably prudent person in like situation, the servant cannot be supposed to be ignorant of it. So. Pac. Co. v. Berkshire, 254 U. S. 415, 418, 41 S. Ct. 162, 163, 65 L. Ed. 335, 337. See, also, 39 C. J. 746, sec. 949."

Butler v. Frazee, 53 L. Ed. 281:

"One who understands and appreciates the permanent conditions of machinery, premises, and the like, and the danger which arises therefrom, or, by the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injuries. Upon that state of facts the law declares that he assumes the risk. * * *

"The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly."

Wheelock v. Freiwald, 66 Fed. (2d) 694:

"Employee assumes risks ordinarily incident to discharge of duties of his employment, and other risks of which he has actual or constructive knowledge, and of which he appreciates the danger."

Delaware, L. & W. Railroad Co. v. Koske, 279 U. S. 7, 73 L. Ed. 578:

"Under the Federal Employers' Liability Act the employee assumes the extraordinary risks of his employment, and those due to the negligence of his employer and fellow employees, if they are obvious and fully known and appreciated."

Barrett v. Virginian Ry. Co., 244 Fed. 397:

"If the defective condition of the step of an engine was so patent as to be readily observed by every one, and plaintiff before he was injured made three trips over the step, he would be deemed to have assumed the risk incident to his employment."

McAdoo v. Anzellotti, 271 Fed. 268:

"Where a defect is known to the employee, or is plainly observable by him, he cannot continue to work in the unsafe place or use the defective appliance, in the face of his knowledge and without objection, without assuming the risk."

Cincinnati, N. O. & T. P. Ry. Co. v. Thompson, 236 Fed. 1:

"An employee assumes risks attributable to his employer's negligence, where they are plainly observable though he did not know of them."

432

In the opinion in this case, the court in speaking of assumption of risks says:

"It is trite that two things are essential to make out the defense, to wit, knowledge of the defective condition out of which the risk arose, and appreciation of the risk arising therefrom. These two, indeed, may be reduced to one, i. e., knowledge of such condition and of such risk. * * * The word appreciated 'does not mean more than actual knowledge. It does not mean less.'"

Pipkin v. Midland Valley R. Co. (Kan.) 19 P. (2d) 701, says:

"The accepted rule is that a man is charged with a knowledge of that which is plainly visible to him."

See Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 58 L. Ed. 1062; Hamm v. Texas & N. O. R. Co. (Tex. Civ. App.) 221 S. W. 345; Atlantic Coast Line R. Co. v. Kennedy (Ga.) 92 S. E. 973.

18 R. C. L. 685, sec. 173:

"* * * If an employee is in as good a position as his employer for ascertaining and understanding the situation, and equally well knows and appreciates the conditions, he cannot be allowed to complain for injuries sustained by working therein."

While primarily the act of negligence complained of by the plaintiff was that of the employer, yet the assumption of risk under the Federal Employers' Liability Act is as stated in 18 R. C. L. 677, section 168, to wit:

"Primarily, the employer is bound to provide for the safety of his employees, and the employees have a right to rely upon the performance of this duty. They are not barred of recovery for injuries * * * occasioned by the failure of the employer to perform his primary duty, unless they have actual or constructive knowledge of the dereliction and of the perils arising therefrom, and continue in the employment without protest or complaint.

"So the employee does assume the risk of the employer's negligence when the fact of such negligence is known and the danger therefrom appreciated by him."

Roberts' Federal Liability of Carriers, vol. 2, sec. 831, lays down the same rule.

The rule applicable under the federal law in Oklahoma is in harmony with the above cases and is found in Kansas City, M. & O. Ry. Co. v. Roe, 72 Okla. 238, 180 P. 371, and Lusk v. Bandy, 76 Okla. 108, 184 P. 144. While it was held under the evidence in these cases the question of assumption of risk was one for the jury, the rule enunciated with reference to assumption of risk is the same as that announced in the authorities hereinbefore cited.

The lower court should have sustained the defendant's motion to direct a verdict in its favor upon the ground that the plaintiff assumed the risk, and its refusal to do so was reversible error, and the judgment is accordingly reversed, with directions to set aside and vacate the verdict of the jury and the judgment for the plaintiff and render judgment for defendant.

The Supreme Court acknowledges the aid of Attorneys Chas. S. MacDonald, Chas. B. Wilson, and Donald H. Waid in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. MacDonald and approved by Mr. Wilson and Mr. Waid, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, BAYLESS, CORN, and GIBSON, JJ., concur. PHELPS, J., dissents.